Scott *v.* The State.

JAMES SCOTT *v.* THE STATE.

1. CRIMINAL LAW. Oath administered to officer not to allow the jury to *converse*, etc., is substantially the same as not to allow them to *communicate*, etc.

2. It is not reversible error if one of the jurors receive a letter or a newspaper, if shown that neither letter nor paper had any reference or allusion to the case on trial.

3. It is not error for the record to fail to show the jury were brought into court by their officer.

4. The indictment charged that "De Oliver" was killed, and the proof showed it was "Dewitt Oliver." De is *idem sonans* with D, the initial letter of Dewitt, and if sound is not affected, misspelling is not material. If no question is raised on the trial as to name of deceased, he being spoken of as "deceased" or by his surname, it is too late to raise the objection after verdict.

5. The record is in the breast of the court during the term of the court, and he may amend to correspond with the facts.

6. Jurors will not be permitted to impeach their verdict upon the ground they were anxious to be discharged. They will not be permitted to show such a miserable excuse.

7. The remark of the. attorney-general, that "if the juries don't punish crime, the people will rise up, and should rise up and punish it," is reprehensible, and he should have been rebuked by the court in the presence of the jury.

   Law officers are under peculiar obligations to set an example of respect for the law, and not to say or do anything which will tend to beget or encourage lawlessness.

FROM GIBSON.

Appeal in error from the Law Court at Humboldt. J. T. CARTHEL, J.

W. M. McCALL for Scott.

ATTORNEY-GENERAL LEA for the State.

DEADERICK, C. J., delivered the opinion of the court.

Scott was convicted of manslaughter, and sentenced to two years' confinement in the penitentiary, and has appealed to this court.

His counsel insists that the judgment should be reversed for several reasons submitted in argument.

First, it is insisted that the oath administered to the officers who had the jury in charge was not such as the law required. The officers were sworn to keep them together separate and apart from other citizens, and not permit them to converse with any person or to converse with them themselves about the case. It is insisted the oath should have been that they should not *communicate*, etc., and that the officers should not converse with each other in their presence, etc. The oath as administered is substantially that insisted on. Webster defines "converse" to mean, "to hold intercourse," "to talk familiarly." If kept separate and apart and prevented from holding intercourse with others, the jury would certainly be free from the danger of corruption. And there is no pretense that any improper influences were brought to bear upon them, unless it be that one of the jurors received a letter written by a friend in Missouri, and a newspaper, while he was upon the jury; but it is shown that neither the letter nor paper had any allusion or reference to the case on trial. We are of opinion, therefore, that there is nothing in this objection, nor

because the record does not show that the jury were brought into court by their officer.

It is also objected that the indictment charges the killing of "De Oliver," and the proof shows it was "Dewitt Oliver" who was killed. No doubt "De," the first syllable of the name "Dewitt," was intended and used as an abbreviation of the true name, but the proof does not show it affirmatively; and "De," as written in the indictment, is *idem sonans* with D, the initial letter of the deceased's given name, and if the sound is not affected the misspelling is not material. And in 2 Swan, 667, it is held: "Where no question is raised on the trial as to the name of the deceased, he being spoken of by his surname and as 'deceased,' it is too late after verdict to raise the objection that the given name is not proved." In this case deceased was well known to all the witnesses,—one giving his full name in speaking of him, all the others speaking of him as "Oliver." No question was raised as to his name, so that, if his given name had been entirely omitted in the evidence, after verdict no question could be raised upon it. His identity was well established as the person slain by the defendant.

All the records are in the breast of the judge during the term, and he may amend them to correspond with the facts. So, in this case, the jury were in charge of one of the officers sworn, while the other was in court, and it so appears of record.

The jurors cannot be permitted to impeach their verdict upon the ground they were anxious to be dis-

Scott *v.* The State.

charged. They will not be permitted to show such a miserable excuse for rendering a verdict of guilty, in a case where the law and facts required such a verdict from an honest and consciencious and intelligent jury.

The remarks of the attorney-general, that "if the juries don't punish crime, the people will rise up, and should rise up and punish it," were very reprehensible, and the court ought to have rebuked him in the presence of the jury; but we do not think they would justify us in granting a new trial. The law officers of the State are under peculiar obligations to set an example of respect for the law, and to do and say nothing that will tend to beget or encourage lawlessness.

We think the charge full and accurate, and that the defendant has no ground of complaint against the verdict. It was a merciful one. The facts would well have warranted a much severer punishment than that imposed.

Let the judgment be affirmed.