McMAHAN et al. v. TUCKER et al.—216 S. W. (2d) 356.

Western Section. July 2, 1948.

Petition for Certiorari denied by Supreme Court, Nov. 9, 1948.

432

434

Thomas Steele, Jr., and B. C. Durham, both of Ripley, and Tyree B. Harris III and John J. Hooker, both of Nashville, for plaintiffs in error.

George C. Watkins, of Ripley, and Armstrong, McCadden, Allen, Braden & Goodman and John S. Porter, all of Memphis, for defendants in error.

LLOYD S. ADAMS, SPECIAL JUDGE. These seven suits were separately filed in the Circuit Court of Lauderdale County, Tennessee, on March 16, 1946, by the several plaintiffs hereinbelow listed, against Joe M. Tucker d/b/a City Lumber Company, and Vernon Griffin, for damages sustained as the result of an automobile accident at about 2:00 a. m. on March 19, 1945, as follows:

Hannah Sue McMahan, for personal injuries, in the sum of $10,000;

Allan McMahan, for personal injuries, loss of services of his wife and damages to his automobile, in the sum of $2,500;

Walter R. Caldwell, Administrator, for the wrongful death of his intestate, Cora B. Caldwell, in the sum of $50,000;

Walter R. Caldwell, Administrator, for the wrongful death of his intestate, H. D. Caldwell, Sr., in the sum of $50,000;

Dorothy Crihfield Caldwell, surviving widow, for the wrongful death of her husband, Robert Lee Caldwell, in the sum of $50,000.

Dorothy Crihfield Caldwell, for her own personal injuries, in the sum of $50,000;

Mary Carol Caldwell, a minor, by next friend and regular guardian, Dewey Crihfield, for personal injuries, in the sum of $10,000.

The parties are here referred to as they stood in the Court below.

The declarations filed by plaintiffs are practically identical. In the first count it is alleged, in substance, that on or about March 19, 1945, at about 2:00 o'clock a. m., the plaintiff Allan McMahan was driving his automobile, in which the other plaintiffs were riding, in a northerly direction on Highway 51, and when it reached a point about one mile South of the town of Ripley, Tennessee, there appeared suddenly in front of them an International truck, bearing 1944 license 42P2531, which truck was owned by the defendant Joe M. Tucker and which had been operated to said point by the said Vernon Griffin, while acting in the course and within the scope of his employment, and in furtherance of the business of the defendant Tucker; that said truck was negligently parked on the highway without lights, flares, or other warning devices, and without an attendant present to warn approaching vehicles of its presence; that because of these acts of negligence the automobile in which plaintiffs were riding collided with the parked truck, resulting in the death of three of the occupants and personal injuries to the remaining four occupants.

The second and third counts are based upon violation of statutes providing for certain precautions in parking or leaving trucks upon the highway. Williams' Code,

sec. 2690. It is unnecessary to detail the allegations of the declarations, as there is no doubt that the truck was negligently parked on the highway. The only question being as to the person or persons guilty of this negligence.

The defendants filed pleas of general issue to each of the counts of the declarations.

The cases were consolidated and tried together. At the conclusion of all the evidence introduced on the trial, the defendants moved the Court for a directed verdict. These motions were overruled and the issues submitted to the jury, resulting in verdicts against both defendants, as follows:

Hannah Sue McMahan ........................$10,000
Allan McMahan, for personal injuries and loss of
 services of his wife ..................... 1,000
 Damages to his automobile .................. 500
Walter R. Caldwell, Administrator, for the wrong-
 ful death of Cora B. Caldwell ............ 20,000
Walter R. Caldwell, Administrator, for the wrong-
 ful death of H. D. Caldwell, Sr. ............ 25,000
Dorothy Crihfield Caldwell, surviving widow, for
 the wrongful death of Robert Lee Caldwell .. 35,000
Dorothy Crihfield Caldwell, for personal injuries . 10,000
Mary Carol Caldwell, by next friend etc. ...... 5,000

The defendants filed motions for a new trial in each of the cases, and the motion of the defendant Tucker in each of the cases was granted upon the ground that the Court should have directed a verdict for him at the conclusion of all the evidence, and proceeded therefore to set aside the verdicts of the jury and to direct a verdict for the defendant Tucker in each of the cases. As to the defendant Griffin, the Court suggested remittiturs as to certain of the plaintiffs, which were accepted by

plaintiffs under protest, and his motions for a new trial were overruled. The respective verdicts of the jury were reduced upon the remittiturs to the following amounts:

Hannah Sue McMahan ........................$ 7,000
Walter R. Caldwell, Adm. for Cora B. Caldwell .. 10,000
Walter R. Caldwell, Adm. for H. D. Caldwell, Sr. . 15,000
Dorothy Crihfield Caldwell, surviving widow of
 Robert Lee Caldwell ................... 25,000
Mary Carol Caldwell ....................... 2,000

The verdicts of the jury against the defendant Griffin in the cases of Dorothy Crihfield Caldwell for personal injuries in the sum of $10,000 and Allan McMahan for personal injuries, loss of services of his wife and damages to his automobile in the aggregate sum of $1,500, were not reduced.

Thereupon, the respective plaintiffs filed motions for a new trial, assigning as error the action of the Court in directing the jury to return a verdict as to the defendant Tucker, which motions for a new trial were overruled and the plaintiffs have perfected their appeals in the nature of a writ of error to this Court, and have assigned errors.

The defendant Tucker has perfected his appeal in the nature of a writ of error, assigning as error the several grounds in his motion for a new trial not sustained by the trial Court in his directed verdict, as a defensive measure in the event the trial Court should be held in error in granting a directed verdict as to the defendant Tucker; and in which event the other alleged errors of the trial Court might be considered in his behalf.

The defendant Griffin has also perfected his appeal in the nature of a writ of error, and has filed his assignment of errors.

This therefore is a three-way appeal, and the case of each appellant will be considered and discussed separately in so far as this is possible or practicable.

The assignments of error filed by plaintiffs present the sole question as to whether the trial Court was in error in sustaining the motion of the defendant Joe M. Tucker for a directed verdict, on his motion for a new trial.

■ The principles applicable to directed verdicts have been so frequently announced that there can be no doubt as to the duty of this Court in considering the facts. The cases upon this subject are too numerous to be collated here. One of the latest and most concise statements upon this subject is found in the case of Tennessee Central Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931: "Upon the consideration of a motion made by defendant for directed verdict 'plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration.' Prudential Ins. Co. [of America] v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; and 'the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence,' Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.''

With this principle in mind, we find that the defendant Joe M. Tucker operated a retail lumber business under the trade name of City Lumber Company. The truck involved in the accident belonged to him, and was ordinarily used in connection with his business. It had the name "City Lumber Company" painted on it and was registered in his name in Lauderdale County under license number 42P-2531. There is no question as to

the ownership of this truck, nor as to the negligence of the operator of the truck who parked or stopped it on the highway in violation of law. The question for determination is—was there any material evidence that an employee of the defendant Tucker acting within the course and scope of his employment and in furtherance of the defendant's business, was guilty of this negligent act?

The defendant Tucker handled and at this particular time had in his place of business a quantity of American woven wire fencing, sometimes referred to in the record as "Page wire", which was a very scarce commodity and difficult to obtain. The Sheriff of Lauderdale County, Oscar Griggs, had tried to buy some of this wire from Tucker and couldn't get it.

One of plaintiff's witnesses, Jim Thompkins, reputable and disinterested, testified that he went to the place of business of the City Lumber Company in the early afternoon on Saturday before this automobile accident on the following Sunday night, to get some lumber for window casing, and also asked about some Page "hog wire", and defendant Tucker said that he didn't have any wire. Later that afternoon, near sundown, which was about 5:30 o'clock, he went back to City Lumber Company to see further about the lumber for window casing, accompanied by his son-in-law Bob Duvall, both of whom saw several rolls of woven wire or "hog wire" and barbed wire, on a truck belonging to defendant Tucker parked on the yard of the City Lumber Company, which was later identified as the truck involved in the accident. Bob Duvall, another reputable and disinterested witness, testified that he also asked the defendant Tucker about wire fencing on the same Saturday afternoon, and was told that he had none. He also corroborated the testi-

mony of Thompkins as going back to the City Lumber Company the second time.

The defendant Tucker stated that he saw neither Thompkins nor Duvall at his place of business on Saturday, and didn't believe either of them was there, creating a direct conflict and contradiction.

The defendant Griffin testified that he never drove a truck of the defendant Tucker except on business of the City Lumber Company, without obtaining permission; that on occasions he had driven the truck involved in the accident, and knew that at the close of business each day the keys to the truck were taken to the office and left in a desk drawer. He denied that he was driving the truck on the night in question. It was proved by three disinterested witnesses that he was seen driving the truck in company with another employee of the defendant Tucker, on the night of the accident, in a neighborhood in which defendant Tucker had many customers, with several rolls of wire on it resembling that seen on the truck by Thompkins and Duvall the previous Saturday afternoon.

It is suggested by counsel for plaintiffs that the wire was being delivered clandestinely to a preferred customer, or in the "black market". It could be inferred that the wire was being delivered by the employee contrary to the usual custom of doing business or without express instructions from Tucker, but nevertheless in furtherance of his business.

On Sunday afternoon the defendant Griffin was seen in conversation with defendant Tucker.

At the time of the accident there was no wire on the truck, tending to show that the wire was delivered that night. The truck was found headed toward Ripley on a main highway, on the nearest route to the town of Ripley

and the business of City Lumber Company, and about a quarter of a mile from the corporate limits.

As heretofore stated, it was customary at the close of business each day to take the keys to the truck and leave them in a desk drawer, which was locked, in the office, which was also locked. These keys were found on the floor board of the truck after the accident. There is no proof in the record that the office or desk drawer were broken into for the purpose of stealing the keys.

In the instant case there is proof that the truck was registered in the name of defendant Tucker, and also proof of facts from which it may be logically inferred that the driver of the truck on the night of the accident was on a mission for the owner.

As to the statutory presumption arising from proof of registration of a motor vehicle in the name of defendant, that it was being operated in furtherance of his business at the time of the accident, it is insisted by plaintiffs that this presumption can be overturned only by the introduction of "positive, clear and indisputable proof" to the contrary, citing in support of this contention the case of Williams, Adm'r v. Bass, 8 Tenn. App. 482, 490; Frank v. Wright, 140 Tenn. 535, 205 S. W. 434; Welch v. Young, Adm'r, etc., 11 Tenn. App. 431. The quoted language is found in the first case above cited, but has, from our analysis of later cases, been modified, and the rule now is that the statutory presumption only casts the burden upon defendant of going forward with the proof, and upon the introduction of any credible evidence upon the subject, the statutory presumption disappears. In the case of Gouldener v. Brittain, 173 Tenn. 32, 34, 114 S. W. (2d) 783, the Supreme Court said: "In disposing of the appeal against defendant Goodyear Tire & Rubber Company, the court applied the rule alluded to

in Frank v. Wright, 140 Tenn. 535, 541, 205 S. W. 434, and applied in Phillips-Buttorff Mfg. Co. v. McAlexander [Adm'r], 15 Tenn. App. 618, that when a witness is discredited by his own statements, or by other contradictory proof, the issues should go to the jury to determine whether or not the explanatory evidence overcomes the prima facie case made out by mere proof of registration. To authorize application of the rule in Frank v. Wright, supra, and Phillips-Buttorff Mfg. Co. v. McAlexander, there must be a substantial, not merely a colorable or immaterial, contradiction.''

In other words, explanatory evidence overcomes the statutory presumption if there is no proof of a substantial nature tending to discredit the witness.

The rule referred to in the foregoing quotation as applied in the case of Phillips-Buttorff Mfg. Co. v. McAlexander, Adm'r, is as follows: ''But it has been repeatedly held that the Legislature did not intend, by the statute last above cited, to create more than a presumption, and 'when the proofs are present there is neither foundation nor room for the presumption'. Frank v. Wright, 140 Tenn. 535, 448, 205 S. W. 434; Woody v. Ball, supra, 5 Tenn. App. 300, 303, 304; Welch v. Young, supra, 11 Tenn. App. 431, 436, 437.'' 15 Tenn. App. page 625.

■ As stated, if there is any substantial evidence upon which the jury could discredit the witness ''by his own statements or by other contradictory proof'' and there is no other credible evidence upon the subject, the statutory presumption would remain in the case.

■ In considering this question, it is well to keep in mind the distinction between a statutory presumption arising from registration and a logical inference to be drawn from proven facts and circumstances, as pointed

out by Presiding Justice Anderson in the case of Southern Motors v. Morton, 25 Tenn. App. 204, 154 S. W. (2d) 801, 806.

"The true effect therefore of the Code provision is to give to proof of registration a procedural consequence that would not otherwise result. This is sometimes rather aptly referred to as an administrative presumption. See Cruse-Crawford Mfg. Co. v. Rucker, supra [220 Ala. 101, 123 So. 897]. It is available only in the absence of any evidence upon the subject; and operates merely to shift to the defendant the burden of going forward with the evidence on the point involved. When this burden has been met the presumption is *functus officio*.

"It follows that this so-called statutory presumption is not evidentiary in the respect that it can be weighed against evidence. This is true because it is arbitrary in the sense that the proposition presumed, i. e., that the given defendant's car was being operated by his servant acting within the scope of his employment, is not a logical deduction from the fact upon which it is based, i. e., registration of the vehicle in the defendant's name; but, upon the contrary, is arbitrarily required by the statute as a matter of expediency. A presumption of this kind is to be distinguished from an inference which, as a matter of logic, can be properly drawn from a proven fact or facts. Such an inference is itself evidence and remains in the case even though there be evidence opposed thereto with respect to point involved.

"It is also to be distinguished from 'presumptions' that logically attend fundamental facts that are characteristic of human nature, as the presumption against suicide resting upon man's love of life, a basis supplied by the common knowledge and experience of mankind;

for it is held in this jurisdiction that this 'presumption' as well as the 'presumption of innocence' and possibly that in favor of sanity (see Pierce v. Pierce, 174 Tenn. 508, 519, 127 S. W. (2d) 791), whether as exceptions or otherwise, are to be thrown in the scales and weighed along with the other evidence pro and con. Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85.

"Upon the other hand, as already pointed out, the procedural consequence contemplated by the Code provision belongs to that class of presumptions concerning which it was said in Frank v. Wright, 140 Tenn. 535, 548, 205 S. W. 434, 437: 'Now presumptions are raised to take the place of proof; "where the proofs are present there is neither foundation nor room for the presumption"',' citing Keller v. Over, 136 Pa. 1, 20 A. 25; Galpin v. Page, 18 Wall. 350-366, 21 L. Ed. 959.

"It also falls within the purview of the pronouncement in Bryan v. Aetna Life Ins. Co., supra (174 Tenn. 602, 130 S. W. (2d) [85], 89), reading as follows: 'We have a number of decisions that a bare presumption disappears upon the introduction of circumstantial rebutting evidence', citing Marquet v. Aetna [Life] Ins. Co., 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749; Ann. Cas. 1915B, 677; Brown v. Hows, 163 Tenn. 138, 155, 40 S. W. (2d) 1017; Central of Georgia R. Co. v. Fuller Combing Gin Co., 2 Tenn. Civ. App. 343, 2 Higgins 343.

"It is not amiss to say that the distinction between what, for convenience of expression if not otherwise, may be termed 'bare' or 'arbitrary' presumptions raised as a matter of expediency for procedural purposes, and inferences that as a matter of logic are properly drawable from other facts, is an important one which it is well enough to keep in mind in the trial of cases where presumptions are relied on."

■ ■ On the same question, in the case of H. G. Hill Co. v. Squires, 25 Tenn. App. 164, 153 S. W. (2d) 425, 427, it is said:

"And it is next insisted that the plaintiff's proof of identity is based solely upon a legal presumption, and that a presumption must give way in the face of positive testimony to the contrary, and since the driver of a convoy truck denies causing the plaintiff to run off the road, stating that he was already off the road when he passed, then there is no rule for a presumption of identity since plaintiff and Smith were unable to state who owned the truck or who was driving it.

"A legal presumption is a fiction of the law and is an assumption for convenience, but where proof to the contrary is introduced, the assumption is waived for it is no longer logical to assume a fact which is refuted by positive testimony. Frank v. Wright, 140 Tenn. 535, 543, 205 S. W. 434. But instances arising from proven circumstances take on a higher quality of evidential value, and to deny for (by) positive proof the inference arising from the circumstances will not destroy it, otherwise tracks, finger prints, etc., would have no evidential value so long as the defendant was willing to deny them. So, an inference arising from proven circumstances is of a higher character of evidence than a legal presumption and the inference is not destroyed by contradictive testimony.

"The same issue was before this court in the case of Pinnacles Sales Co. and Bill Renfro v. Sam Pat Thompson, Administrator,[1] Knox Law, decided January 1940, and writ of certiorari denied by the Supreme Court. In

---

[1] No opinion for publication.

that case the court said: 'The presumption of law disappears in the face of substantive evidence to the contrary, provided the evidence is not impeachable from the record, but circumstantial evidence may contradict the positive testimony and corroborate the presumption. If this were not the fact it would be impossible to convict the defendant when he was of a mind to deny proven circumstances. The inference arising from the circumstantial evidence is of higher evidential quality than a mere presumption of law; a logical and legitimate inference arising from proven circumstantial facts cannot be destroyed as a matter of law by the positive testimony of witnesses; there is then established a conflict of testimony to be determined by the jury. We do not think it necessary to enter into a review of the authorities to establish this point.' "

■ The Supreme Court in the case of Bryan v. Aetna Life Insurance Company, 174 Tenn. 602, 130 S. W. (2d) 85, held that circumstances which usually attend the essential fact may be taken as establishing that fact, and that facts out of which the presumption arises and the probabilities to be drawn therefrom, may be considered as well as the other facts in evidence.

■ Also in the case of Law v. Louisville & Nashville Ry. Co., 179 Tenn. 687, 696, 697, 170 S. W. (2d) 360, 363, Judge Chambliss in a concurring opinion said: "The general rule, applicable to both civil and criminal cases, is that any material fact may be established by either direct or circumstantial evidence. As said in 20 Am. Jur., p. 258, citing numerous decisions: 'The competency of circumstantial evidence is not open to question, provided it is the best evidence which the nature of the case admits,' and it is 'sometimes as cogent and irresistible as direct and positive testimony.' Proof is given of

facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to the 'common experience of mankind.' Webb v. State, 140 Tenn. 205, 203 S. W. 955, 15 A. L. R. 1034.

"As well expressed in Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644, 651, 95 A. L. R., 869, 'any evidence, whether direct or circumstantial, that tends to prove the operative facts, is admissible . . . Causes, of action are always set forth affirmatively and if they are to prevail they must be supported either (1) by facts tending to prove directly the cause of action pleaded or (2) by legitimate inferences from circumstances which have met the tests of admissibility.' In Greenleaf on Evidence, 15th Ed., sec. 13, this is said: 'In civil cases it is sufficient if the evidence on the whole agrees with and supports the hypothesis which it is adduced to prove. . . . In both cases (civil and criminal) *the verdict may well be founded on circumstances alone,* and these often lead to a conclusion more satisfactory than direct evidence.' (Italics supplied.) In Mars v. Philadelphia Rapid Transit Co., 303 Pa. 80, 154 A. 290, 292, it was said that, where 'a fact is deducible as a reasonable inference from the facts and conditions directly proved, and it cannot justly be classed as a mere conjecture or surmise or guess.' "

■ We find in the record proven facts, hereinabove related, from which it may logically be inferred that the driver of the truck was on a mission for the owner within the scope of his employment on the night of this accident. . This inference, and the facts upon which it is founded, cannot be cast aside and disregarded upon a motion for a directed verdict as, in addition to violating the principle discussed immediately above, it would be a flagrant violation of the principle that the evidence

must be considered most favorable to the adverse party, together with all legitimate inferences to be drawn therefrom.

The case of Frank v. Wright, 140 Tenn. 535, 539, 205 S. W. 434, 435, cited in both the foregoing quotations, adopts this rule:

"The true rule is, we think, as stated by Labatt in 6 Master and Serv., sec. 2281a:

" 'A servant may be presumed *prima facie* to have been acting in the course of his employment, wherever it appears, not only that his master was owner of the given instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended its use in connection with its use in the master's business.'

"In our opinion the last phrase in the above quotation is a just qualification. No presumption of a servant's acting in the line of duty should be drawn unless time, place, and the other circumstances in shedding light upon the transaction, indicate that it was one within the scope of the driver's duty. . . ."

It is intimated that the above rule is limited or qualified in that, on a motion for a directed verdict a positive denial by the owner that the driver was on a mission for him, whose evidence is uncontradicted, unimpeached or not discredited, must be accepted as true, and the *inference* that the driver was acting within the scope of his employment in such event is overturned. The following language, isolated and considered independently of the remaining portion of the opinion, might indicate that the Court intended to limit the rule in the above particular (the Court is not discussing the statutory presumption):

"Did the petitioner, as defendant below, by proof adduced, rebut this prima facie case? Frank testified that

the car was in use at the time without his knowledge or authority, and that the chauffeur was on no mission for him or for any member of his family, for whose use and pleasure the automobile was kept. Mills was alone in the car at the time of the accident. The members of petitioner's family testified that none of them had sent Mills on a mission. The chauffeur was not examined; he having left the jurisdiction shortly after the injuries were inflicted. . . .

"In this state of the proof it is insisted by the counsel of Frank that the facts did not warrant the submission of the case to the jury. It is urged that the defendant carried successfully the burden of showing that the chauffeur was not at the time acting for him.

"This position would be unassailable if the testimony of Frank had been uncontradicted or unimpeached. . .

"Ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true; but, if the witness relied upon to establish a given fact be discredited or impeached, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. There must, it is true, be a substantial and more than colorable claim that the witness has been discredited; but, where this may by the jury be deemed to be sufficiently shown, the trial judge does not err in submitting the case to the jury.

. . . . . . .

"If the jury should thus discredit the testimony of Frank on the point the use the car was put to on the occasion in question, the prima facie case of his liability for the tortious act of his chauffeur would not be de-

stroyed, as a matter of law, and therefore the direction of a verdict in Frank's favor was properly denied." 140 Tenn. pages 540-543, 205 S. W. page 435.

▇▇ Our impression of the principle announced in the case of Frank v. Wright is that if the testimony of the witness is contradicted, either by proven facts or by logical inferences to be drawn from proven facts, or if substantial evidence is introduced tending to impeach or discredit the witness, then the case should be submitted to the jury.

We think the Court did not intend to say that proof of facts and circumstances, from which it could be logically inferred that the motor vehicle was being used in furtherance of the master's business, disappeared upon positive proof to the contrary.

The latest expression of the Court of Appeals upon this subject is an opinion by Judge Felts in the case of Good v. Tennessee Coach Company, Tenn. App., 209 S. W. (2d) 41, 44, certiorari having been denied by the Supreme Court on March 5, 1948:

"They did not affect the pre-existing general rule of the common law that such proof could be made by circumstantial evidence. That common law rule was, and still is, that a prima facie case of *respondeat superior,* or the relation of master and servant, may be made by evidence of these circumstances: (1) that defendant was owner of the offending vehicle; (2) that it was being operated by a person generally employed by the owner as his servant; and (3) that at the time of the accident the vehicle was being operated under conditions resembling those which normally attended its operation in the master's business. Frank v. Wright, 140 Tenn. 535, 205 S. W. 434; Western Union Tel. Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752; cf: Davis v. Newsome Auto Tire &

Vulcanizing Co., 141 Tenn. 527, 213 S. W. 914; East Tennessee & Western North Carolina Motor Transp. Co. v. Brooks, 173 Tenn. 542, 121 S. W. (2d) 559.

"It is true these circumstances cannot be made out by conjecture or speculation, but must be proved by evidence. Such evidence, however, need not rise to that degree of certainty which will exclude every other reasonable conclusion. It is enough if such evidence make out these circumstances as the more probable hypothesis—if the balance of the probabilities preponderate in favor of such circumstances. Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85; New York Life Ins. Co. v. Nashville Trust Co., 178 Tenn. 437, 451, 159 S. W. (2d) 81, 86; Law v. Louisville & N. R. Co., 179 Tenn. 687, 608-701, 170 S. W. (2d) 360; Phillips v. Newport, 28 Tenn. App. 187, 201, 202, 187 S. W. (2d) 965, 970, 971."

 In the instant case the testimony of the defendant Tucker and his other witnesses to the effect that the truck was not being used on a mission for him, or within the scope of the servant's employment, is contradicted by logical inferences to be drawn from proven facts establishing conditions resembling those which normally attended the use of the truck in Tucker's business.

By looking at some of the countervailing evidence which we have cast aside in considering this question of a directed verdict, it appears that business was not conducted by defendant Tucker on Sunday, and it is certainly quite unusual for his employees to be delivering a few rolls of wire fencing late on Sunday night, and there is evidence that the truck was stolen. This may not exactly conform to the "time element" as provided in the second paragraph of the first quotation from Frank v. Wright. But to disregard the inference that defendant Griffin was acting in furtherance of the business of defendant

Tucker on the ground that the time was unusual, or perhaps created a suspicion of deviation or irregularity, would be contrary to the rule that in considering a motion for a directed verdict, only the favorable facts and inferences are to be considered, and would also be weighing the unfavorable evidence against the party against whom the motion is being made.

 It isn't necessary that defendant Tucker expressly authorized this particular trip or that he knew about it, if the employees at the time were acting within the scope of their employment and in furtherance of the employer's business, under an implied authority or under a general authority not expressly authorized or directed on the particular occasion. A concise statement of this principal is found in Vol. 5, Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., sec. 3011:

"Ordinarily, if the driver of an automobile is acting within the scope of his employment and in furtherance of the master's business, the owner will be liable for his negligence in operating the machine, although he may be ignorant of, or may not consent to the driver's use of the automobile, and although the act of the employee in using it may not be necessary to the performance of his duties, or the driver at the time of an accident caused by his negligence is actually disobeying the orders of his master.

. . . . . . .

"The true test then of whether or not a servant is acting within the scope of his employment is whether the servant, at the time of the injury complained of, is performing a service for the master in furtherance of the master's business, not the method of its performance, nor whether it is done in exact observance of detail prescribed by the employer."

454

See also Kennedy v. Union Charcoal & Chemical Co., 156 Tenn 666, 4 S. W. (2d) 354, 57 A. L. R. 733.

■ There is a rule announced by the Supreme Court to the effect that the appellate courts may disregard impossible or palpably improbable testimony, in considering the principles applicable to direct verdicts, and treat it as no evidence. In the case of Southern Ry. Co. v. Hutson, 170 Tenn. 5, 7, 8, 91 S. W. (2d) 290, 291, in explanation of this rule, the Court said: "Conceding the soundness of the rule as applied in this line of cases, this distinguishing element must be kept in mind. The testimony under review is not destroyed by conflicting testimony, never mind how fully supported, when the test is that of the credibility of the witnesses. The improbability of the truth of the plaintiff's testimony which justifies rejection under this rule may not be rested upon either a mere numerical preponderance, however great, or upon any theory involving consideration of the comparative credibility of the witnesses. The palpable untruthfulness requisite must ·be (1) inherent in the rejected testimony, so that it contradicts itself, or (2) irreconcilable with facts of which, under recognized rules, the court takes judicial knowledge, or (3) obviously inconsistent with, contradicted by, undisputed physical facts."

■ Also from the case of Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. (2d) 272, 276: "It is said in the brief for defendants that certain testimony of the plaintiff with respect to the manner in which the collision occurred is 'of such a nature as would be unbelievable', and 'is not the character of evidence upon which this Court should sustain a verdict in his behalf'. 'The credibility of the witnesses is peculiarly a matter for the jury to determine, and if the witnesses have given substantial testimony bearing on the issues, to which the jury might, in the

proper exercise of its functions, give credit, it is error for the court to direct a verdict in opposition to such testimony on the ground that the witnesses are unworthy of belief.' Finchem v. Oman, supra, [18 Tenn. App. 40] page 50, 72 S. W. (2d) [564], page 570."

Measured by these standards this Court cannot arbitrarily say that the testimony upon which it is sought to base the inference that the truck was being used in furtherance of the owner's business on Sunday night, is so inherently improbable that no reasonable person can accept it as true, and that reasonable men, in the exercise of fair and impartial judgment, would reject the inference or would disagree as to the inference to be drawn from the proof. The trial Court at the conclusion of all the proof, upon defendants' motion for a directed verdict, accepted the inferences of fact in favor of plaintiffs, and only reversed himself after the argument on a motion for a new trial. It would be contrary to reason and fact for this Court to now say that this evidence should be rejected as palpably improbable.

We have heretofore discussed that part of the evidence whereby the defendant Tucker is directly contradicted by the testimony of Thompkins and Duvall, and if a decision of the question as to whether the statutory presumption from registration had been overturned depended solely upon his testimony, it would be a question for the determination of the jury, as this contradiction is upon a material matter and considering his interest in the outcome, might be considered by the jury as discrediting the testimony of the defendant, Tucker. We think the testimony that the truck was stolen is sufficient to dissipate the presumption arising from proof of registration.

As to the proven facts from which it might be logically inferred that the truck was being used in further-

ance of the business of the defendant Tucker, this direct contradiction of the testimony of the defendant Tucker upon a material matter lends weight to the necessity for submission of this question to the jury. Where a witness testifies to a material fact, and his testimony as to that one fact is undisputed, but the testimony of this witness is contradicted with reference to other material facts, the credibility of the witness with reference to both the disputed and undisputed facts should be submitted to the jury for determination. Phillips-Buttorff Mfg. Co. v. McAlexander, Adm'r, supra, 15 Tenn. App. 618; Welch v. Young, Adm'r, etc., supra, 11 Tenn. pp. 431.

Measured by the above rules, we hold that the statutory presumption arising from proof of registration was overturned by credible proof, after excluding that of defendant Tucker, and could not be considered by the jury for any purpose. However, there is in the record substantial proof from which it could be legitimately and logically inferred that the truck was being used in furtherance of the defendant Tucker's business, and these inferences remain in the case, and are to be considered with other evidence. Therefore, the plaintiffs' first assignment of error is sustained. We hold that the trial Court erroneously sustained the motion for a new trial and erroneously directed a verdict for the defendant Tucker.

It is contended for plaintiffs that where the appellate court determines the trial court to have been in error in directing a verdict, that the verdict of the jury should be reinstated, as held in the cases of Stapp v. Andrews, 172 Tenn. 610, 113 S. W. (2d) 749; Merriman v. Coca Cola Bottling Co., 17 Tenn. App. 433, 68 S. W. (2d) 149. Ordinarily a jury verdict would be reinstated upon the trial court being reversed, but this is upon the as-

sumption that there was no reversible error, committed against the defendants below in the trial of the case, as presented by their motion for a new trial and assignments of error in this Court.

Defendant Tucker's First assignment of error challenges that portion of the charge of the trial Court to the jury, underscored by us, in the following quotation:

"By statute it is provided:

" 'In all actions for injury to persons and/or property caused by the negligent operation or use of an automobile, auto truck, motorcycle, or other motor propelled vehicle within this state proof of ownership of such vehicle shall be prima facie evidence that such vehicle at the time of the cause of action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which the cause of action arose.'

"It is also provided by statute:

" 'Proof of registration of said motor propelled vehicle in the name of any person shall be prima facie evidence of the ownership of said motor propelled vehicle by the person in whose name said vehicle is registered and such proof of registration shall likewise be *prima facie* evidence that said vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment.' [Williams' Code, secs. 2701, 2702.]

*"I further charge you with reference to the ownership of a motor vehicle that in order to rebut and destroy the prima facie case the party upon whom rests the burden of repelling its effect need only to produce such amount or degree of proof as will countervail the presumption arising therefrom. In other words, it is suf-*

*ficient if the evidence offered for that purpose counter-
balance the evidence by which the prima facie case is made
out and established. It need not overbalance or out-
weigh it."*

This is all of the charge to the jury upon the question
as to proof of registration being prima facie evidence
that the truck was then being operated by the employee
within the course and scope of his employment.

That part of the charge complained of which we have
understood, obviously had reference to the statutory pre-
sumption above quoted, and the entire charge upon this
specific question in effect said to the jury that the bare
presumption created by proof of registration should be
weighed with the positive proof upon the subject; and
the positive proof must "counterbalance" the statutory
presumption from registration.

The effect of the Court's charge is that the pre-
sumption from registration must be considered as evi-
dence and weighed with the proven facts; and can only
be dissipated by counterbalancing evidence.

This is error. As we have heretofore pointed out, the
presumption arising from proof of registration in the de-
fendant's name disappears entirely from the case as soon
as positive credible evidence is introduced upon this sub-
ject. The Court was in error in charging that it was to
be put in the counterbalance and weighed. See Southern
Motors Co. v. Morton, supra, 25 Tenn. App. 204, 154 S.
W. (2d) 801; Woody v. Ball, 5 Tenn. App. 300; Standard
Tire & Battery Co. v. Sherrill, 170 Tenn. 418, 95 S. W.
(2d) 915; Phillips-Buttorff Mfg. Co. v. Alexander, Adm'r,
supra, 15 Tenn. App. 618. The First assignment of error
filed by defendant Tucker is sustained.

The defendant Tucker's Eighth assignment of
error is directed to the refusal of the trial Court to give

the following special request in charge to the jury: "I charge you that if after considering the testimony of all the witnesses in the case you find any credible evidence of the use and operation of the truck involved on the night that the accident occurred, then you must base your verdict upon that evidence in deciding the issue of whether or not the truck was on the business of the defendant Joe M. Tucker, and you shall disregard the presumption which arises from proof of registration of the truck in the name of Joe M. Tucker in its entirety."

We think this special request would no doubt have clarified the Court's general charge, the subject of defendant Tucker's First assignment of error. Neither the foregoing special request nor the substance thereof was contained in the general charge of the Court. Refusal to charge this special request was error, and this assignment of error is sustained.

Defendant Tucker's Second assignment of error discloses that the Court inadvertently used the words "defendant or defendants" when it should have been "plaintiff or plaintiffs". This inadvertence was corrected at several other places in the charge, and it does not appear that this affirmatively affected the verdict of the jury, and this assignment of error is overruled.

Defendant Tucker's Fourth assignment of error is directed to the following portion of the Court's charge: "I charge you that it is negligence per se; that is, negligence as a matter of law for one to operate an automobile in violation of the statutes of the state regulating the operation of vehicles on the highways. The driver of an approaching vehicle has a right to assume that the law is being observed, and until the glaring and inescapable warning appears, may proceed on the assumption that no standing obstruction is ahead."

The objection is particularly directed to the use of the words "glaring and inescapable." This portion of the Court's charge is almost identical with the language used by the Supreme Court in the case of Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 129, 178 S. W. (2d) 756, 757, in which it is said: "The violation of this statute was negligence per se. The driver of an approaching vehicle had a right to assume that the law was being observed and until this glaring and inescapable warning appeared might proceed on the assumption that no standing obstruction of this character was ahead."

This assignment of error is overruled.

Defendant Tucker's Seventh assignment is as follows:

"The trial court erred in charging the jury, at the request of the plaintiffs, as follows:

" 'In order for you to find in favor of the plaintiffs in these cases it is not necessary for you to find from the evidence that the defendant Tucker expressly authorized or directed the defendant Griffin to drive the truck in question on Sunday, March 18th, or the early morning of Monday, March 19, 1945, or that the defendant Tucker actually knew that the defendant Griffin was so driving said truck, provided you find that the defendant Griffin was driving said truck in the course and scope of his employment, and in furtherance of the business of the defendant Tucker at the time that it was stopped or parked on U. S. Highway 51.

" 'In other words, if you find from the preponderance of the evidence in these cases that the truck in question was negligently parked or stopped by the defendant Griffin on U. S. Highway 51, and that the negligence of the defendant Griffin, in so stopping or parking it directly and proximately caused the accident sued on in these

cases, both the defendants, Tucker and Griffin, would be liable, provided you also find from the preponderance of the proof that said truck was so parked by the defendant Griffin acting in the course and scope of his employment, and in furtherance of the business of the defendant Tucker.' ''

We think this portion of the Court's charge correctly states the law, and the Seventh assignment of error is overruled. As previously stated in this opinion, a servant may be acting within the course and scope of his employment, and in furtherance of the business of the master, under an implied authority or under a general authority not expressly authorized or directed on the particular occasion.

The Third, Fifth, and Sixth assignments of error filed by defendant Tucker challenge portions of the general charge of the Court. We think these are without merit and are overruled. The facts and circumstances in evidence justify the charge of the Court and correctly present plaintiffs' theory of the case.

We have heretofore sustained the Eighth assignment of error, and the same question is presented in the special requests contained in the Ninth and Tenth assignments of error; and the latter are therefore overruled.

Defendant Tucker's Eleventh assignment of error is based upon the refusal of the trial Court to give the following special request in charge to the jury: ''I charge that unless you find from the greater weight and preponderance of the evidence that the truck involved in the accident was left upon the highway by the defendant Griffin while acting within the due scope and course of his employment by the Defendant Tucker that you must find for the defendant Joe M. Tucker, Sr.''

It appears that the general charge of the Court covered the substance of this special request, in the following language: "In order to recover against the defendant, Joe M. Tucker, you must also find by a preponderance of the evidence within the rules heretofore given, that the truck was being operated by his servant in the scope and course of his employment."

Also, we think the following special requests given in charge to the jury fully covered the defendant's contention in this regard:

"Special Request of Joe M. Tucker Sr. No. 4:

"I charge you that the mere ownership of the truck involved in this accident will not render the defendant Tucker liable to the plaintiffs, but in order for you to render a verdict against the defendant Tucker you must find that the truck was driven to the place where the accident occurred and there abandoned or left in whole or in part upon the east half of the paved portion of the highway in a negligent manner as charged by the plaintiffs by the defendant Griffin and that said Griffin was at that time acting within the due scope of his employment and about the business of the defendant Tucker."

"Special Request of defendants Tucker and Griffin No. 1:

"I charge you if you should find that the truck involved in this accident was left upon the highway at the place where the accident occurred by a person or persons unknown, that you must find for both defendants Tucker and Griffin."

The Eleventh assignment of error is overruled.

The special requests contained in defendant Tucker's Twelfth, Thirteenth and Fourteenth assignments of error are fully covered in the Court's general charge, and these assignments are overruled.

█ Defendant Tucker by his Fifteenth assignment of error urges that the trial Court was in error in refusing to strike the evidence of the witnesses Thompkins and Duvall, which is in substance, that each of them saw some rolls of woven wire on a truck on the premises of City Lumber Company on Saturday afternoon prior to the accident on Sunday night. We have heretofore discussed this evidence, and consider it material both from the standpoint of tending to discredit the defendant Tucker and evidence from which legitimate inferences might be drawn on the question of *respondeat superior.* This assignment of error is overruled.

██ The Sixteenth assignment of error of defendant Tucker complains that the trial Court erred in permitting counsel for plaintiff to question the Sheriff of Lauderdale County, in rebuttal, as to whether the witness Madison Crawley, a Negro employee of defendant Tucker, ran in an attempt to avoid arrest after the accident, and in permitting the witness Griggs to testify that Madison Crawley did run to avoid arrest. This assignment of error is not material in view of the previous disposition of this case, but for future guidance in the trial of the cases, we consider this a collateral matter and could only go to contradict the witness Crawley. We cannot see that this evidence is relevant to any material issue in the case, and consider it incompetent. It is a familiar rule that a witness cannot be cross-examined as to a collateral fact irrelevant to the issue, for the purpose alone of contradicting him, and thereby discredit his testimony. Cross v. State, 142 Tenn. 510, 516, 221 S. W. 489, 9 A. L. R. 1354. However, the introduction of this evidence appears to us as trivial and unimportant, and does not appear from the record to have affected the result of the trial, and we hold that it was harmless error, and the as-

signment of error is overruled. Williams Tennessee Code, Sec. 10654.

The Seventeenth and Eighteenth assignments of error of defendant Tucker are based upon the excessiveness of the verdicts of the jury after the remittiturs were ordered by the trial Court. In view of the previous disposition of this case, these assignments are immaterial and are overruled.

We will now dispose of the assignment of errors filed by the defendant James Burnon Griffin.

The First challenges the action of the trial Court in overruling the pleas in abatement filed as to the process and declaration, on the ground that his correct name is James Burnon Griffin, and that the name "Vernon Griffin" appearing in the summons and declaration is a misnomer, and that he should therefore be discharged. There is rebuttal evidence in the record that this defendant was generally known as "Vernon Griffin". In disposing of this question, the trial Court said: "It further appears that the defendant's legal and proper name is James Burnon Griffin, as shown by the family Bible, Selective Service Board registration and classification certificates, Tennessee driver's license, Social Security card, and the testimony of his mother, but that he is known to numerous people who are acquainted with him by the name Vernon Griffin and that Burnon and Vernon are *idem sonans.*" The following cases illustrate this principle: Scott v. State, 75 Tenn. 232; Robertson v. Winchester, 85 Tenn. 171, 1 S. W. 781; Truslow v. State, 95 Tenn. 189, 31 S. W. 987; Nelson v. Trigg, 3 Tenn. Cas. 733; Goodwin v. State, 148 Tenn. 682, 257 S. W. 79. We think the trial Court correctly overruled this plea in abatement, and this assignment of error is overruled.

The Second and Third assignments of error filed by defendant Griffin are in effect that there is no evidence to sustain the verdicts of the jury, and that the trial Court erred in overruling the motion of this defendant for a directed verdict in his favor at the conclusion of all the evidence. We have heretofore discussed the evidence and inferences to be drawn from evidence in this case, and without further discussion we think the trial Court acted correctly in this regard, and these assignments of error are overruled.

Defendant Griffin's Fourth, Fifth, Sixth, Seventh, Eighth, Eleventh, Twelfth, and Thirteenth assignments are identical with defendant Tucker's Fourth, Second, Fifth, Sixth, Third, Fourteenth, Sixteenth and Fifteenth assignments and are each overruled for the reasons stated in overruling these respective assignments of error of defendant Tucker.

The defendant Griffin's Ninth assignment of error is based upon the refusal of the trial Court to give in charge to the jury Special Request No. 3 submitted by the defendant Griffin which is as follows: "I charge you that if you should find from the evidence that the defendant Griffin was not seen by the witness Bob Duvall in the truck involved in this accident, as testified to by the witness Duvall, then you must find for the defendant Griffin."

An examination of the general charge of the Court discloses that this question was amply covered. The Court said: "On the other hand, if you find that the defendant or defendants were not guilty of any of the acts of negligence averred in the declaration, or that the plaintiffs were not injured or that, if injured, such injuries were not the direct and proximate result of any act of negligence on the part of the defendant or defendants, or if the evidence is evenly balanced as to all or any of these

propositions, you will find for the defendant or defendants, as the case may be."

In addition, the Court granted the following special request offered on behalf of both defendants: "I charge you if you should find that the truck involved in this accident was left upon the highway at the place where the accident occurred by a person or persons unknown, that you must find for both defendants Tucker and Griffin."

Therefore, this assignment of error is overruled.

Defendant Griffin's Tenth Assignment of error is based upon the refusal of the trial Court to give in charge to the jury the following special request:

"Special Request of Defendant Griffin No. 2.

"Gentlemen of the Jury:

"I charge you that you cannot infer from the fact that Griffin was seen sometime prior to the accident and a considerable distance away from the place where the accident occurred that he left the truck upon the highway at the place of the accident and thereby proximately caused the accident, even though you should find the fact that he was seen in the truck at such time and place to be true by the greater weight and preponderance of the evidence."

We think this special request was properly refused, and this assignment of error is overruled. The fact that defendant Griffin was seen some time prior to the accident driving the truck that was illegally parked on the highway and which later caused the wreck, is evidence, together with the other facts and circumstances in the case, from which it may be inferred that Griffin drove the truck from the place where it was seen to the scene of the accident. This is not permitting an inference to be based upon an inference, but is a logical inference to be derived from a proven fact.

██ ██ Defendant Griffin's assignments of error Numbers 14 and 15 are to the effect that the verdict of the jury after the remittiturs are excessive, and that the verdicts of the jury after the remittiturs are so excessive as to evidence passion, prejudice or unaccountable caprice on the part of the jury. These assignments of error are made but not discussed and not seriously insisted upon. The action of the trial judge in approving the verdicts, after being reduced by the respective remittiturs, is entitled to a great weight by this Court in considering the question as to whether the verdict is excessive. Brown Transfer Co. v. Gibson, 154 Tenn. 260, 290 S. W. 33; City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612; East Tennessee Light & Power Co. v. Gose, 23 Tenn. App. 280, 130 S. W. (2d) 984; Roddy Mfg. Co. v. Dixon, 22 Tenn. App. 81, 105 S. W. (2d) 513. These assignments of error are overruled.

It results that all the assignments of error filed by the defendant Griffin are overruled, and judgments will be entered for the respective plaintiffs below, with accrued interest and Court costs.

Having sustained the respective assignments of error filed by the plaintiffs, and the First and Eighth assignments of error filed by defendant Tucker, the respective judgments of the lower court as to the defendant Tucker are reversed, and the cause is remanded to the Circuit Court of Lauderdale County for a new trial.

Swepston, J., concurs.

Baptist, J., dissenting.

Baptist, Judge (dissenting).

I am in accord with the finding of the majority of the Court that the statutory presumption arising from proof

of registration was overturned by credible proof, after excluding that of the defendant, Tucker, and could not be considered for any pupose by the jury.

I am unable to agree with the holding in the opinion that there is in the record substantive proof from which it could be legitimately and logically inferred that the truck was being used in furtherance of defendant, Tucker's business and that such inferences are to be considered by the jury with the other evidence.

These cases arise out of a collision occurring in the nighttime on U. S. Highway 51, about a mile and a half south of Ripley, Tennessee, between a truck owned by the defendant, Tucker, and an automobile occupied by the seven plaintiffs. The collision occurred on March 19, 1945, and the suits were instituted on March 16, 1946. The cases were tried in October 1946.

At the time the suits were filed there was no evidence tending to make out a case against the defendant, Griffin. Six months after the suits were filed the evidence against Griffin was developed in this manner.

Bob Duvall testified that on the night of the collision he and the witness, Sellers, were driving in Duvall's truck eastwardly on the Pleasant Hill road at 11 p. m.: That his headlights were on and that he saw a truck of the City Lumber Company loaded with wire parked on the south side of the road facing west; and he was driving about 20 miles an hour and as he approached he looked through his own windshield and through the windshield of the parked truck and recognized the defendant Griffin seated on the driver's side in the cab of the truck.

The Witness Sellers testified that he saw the truck but was not able to distinguish any one in the cab and was not informed by Duvall then or later that Griffin was the occupant.

Immediately after the accident the Sheriff of the County undertook an investigation to ascertain, if possible, the location of any wire that had been taken from the City Lumber Company. In trying to locate the wire, the sheriff in company with the defendant, Tucker, went to the home of Duvall who was not at home. He was informed of this visit and stated that he resented it as a reflection on his honesty. Although he knew the sheriff was making efforts to locate the wire and the driver of the truck he made no report to the sheriff of having seen the truck as he testified to.

Duvall is a kin man of the plaintiff, Allen McMahan, who was injured in the wreck and whose father-in-law, mother-in-law and brother-in-law had been killed.

He testified that he and McMahan were together several times a week from the time of the accident until about eighteen months later, during which time he did not tell McMahan anything about having seen Griffin in the truck on the night of the accident. That about eighteen months after the accident he and McMahan were together in a truck going to Memphis and that on the way McMahan asked him if he knew anything about the accident; that he did not answer McMahan but laughed, whereupon McMahan told him that if he knew anything about it to tell Mr. Durham, one of the attorneys for the plaintiff; that thereafter he went to the office of Mr. Durham and told him about seeing Griffin in the truck..

Duvall gives no explanation of why he withheld this vital information from his friend and kinsman or of his sudden resolution to tell Mr. Durham about it a year and a half after the accident.

This performance on Duvall's part runs contrary to all the experience I have had in human affairs and of how normal men conduct themselves in the affairs of life.

Also, I think Duvall is gifted above the other sons of men in eyesight in being able to recognize the occupant of the truck, in the nighttime, through his own windshield and the windshield of the truck facing him. Also I think this experience fails to accord with the experience of others under similar circumstances. Sellers with the same opportunity, was not able to recognize Griffin as an occupant of the cab of the truck.

But, whatever may be thought of the circumstance above related, as affecting the credibility of the witness, this Court is not authorized to disturb the verdict of a jury, approved by the Trial Judge, if there is any material evidence to support the same. In the case against the defendant Griffin I think the Court is bound by that rule.

I think the Trial Court was not in error in directing a verdict in favor of the defendant Tucker.

Upon this question my difference with the majority is in the application of the rule stated in Frank v. Wright, 140 Tenn. 535, 205 S. W. 434, that "ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true; but, if the witness relied upon to establish a given fact be discredited or impeached, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. There must, it is true, be substantial and more colorable claim that the witness has been discredited."

The contention is that the defendant Tucker's testimony is directly contradicted by the testimony of the witnesses, Thompkins and Duvall, to the effect that Thompkins was in the defendant's place of business on Saturday afternoon and inquired about hog wire and that Tucker told him he didn't have any and that both wit-

nesses testified to seeing several rolls of wire on a truck belonging to defendant parked on the yard of the City Lumber Company. Tucker's testimony is that he knew the two witnesses and that he did not see either of them on the occasion testified to and didn't believe either of them were there; that he had reason to doubt it from what Duvall said. I think a proper analysis of Tucker's testimony is that he was doubtful of the fact that the witnesses were there, not from his own recollection but from what the witnesses themselves had said.

The opinion holds that this is a direct conflict and contradiction and as such tends to impeach Tucker's testimony.

I do not think this testimony material to the issue or that it presents an irreconcilable conflict in the testimony.

The plaintiffs contend that Tucker's testimony that there was no OPA ceilings on wire is an impeachment of his testimony. I think this is immaterial to the issue.

Also plaintiffs contend that Tucker is contradicted by the witness Jones in that he did not remember saying to Jones that if he found the driver of the truck worked for him to let the matter rest until morning.

I think this is likewise immaterial.

In the case of Bogle v. Hammons et al., 49 Tenn. 136, it is said: "Other propositions have been vehemently urged in argument by the defendants; but after a very careful examination of this voluminous record, and all the evidence, relevant and irrelevant, contained in it, we are unable to perceive that the credibility of any of the witnesses has been successfully assailed. There is no proof as to the general character of either of them, and the legal presumption is that all have testified to the truth. It would be useless to repeat here the names of the witnesses, or to particularize the statements which have been assailed. The evidence of persons who have

been examined under oath cannot be impeached, as seems to be the effort in this case, by showing trivial discrepancies as to collateral matters, especially when the witnesses examined for the purpose do not themselves make positive statements, and admit their own want of accurate recollection as to the facts. Nor can the positive statement of a witness that he heard a particular conversation, be disproved, as was attempted, by the statement of another witness that he was present but does not remember whether it occurred or not. Nor can the loose conversations of witnesses, which seem to be at variance with their depositions, be regarded as successfully impugning their veracity, without first calling their attention, as nearly as possible, to the time, place and circumstances of the supposed conversation, so as to give them an opportunity for explanation.''

In Frank v. Wright, supra, the rule is laid down that it must appear not only that the master is the owner of the instrumentality, but also that it was being used under conditions whch normally attended its use in connection with its use in the masters business.

I think the undisputed proof shows that the truck was not being used under conditions which normally attended its use in the masters business.

It is shown by all the witnesses, and not disputed, that Tucker did not operate his business on Sunday and that no employee was authorized to use this truck on Sunday for any business purpose.

It is further shown that the place of business of the defendant was broken into on Sunday night and two rolls of hog fence wire stolen.

Tom Jones, witness for the plaintiff, testified that he saw the truck in question on Sunday night on the Pleasant Hill road with two rolls of hog fence wire on it. That

this circumstance was so unusual that he reported it to the sheriff and notified Tucker. That Tucker told him he should have checked to see who was on the truck and told him to put whoever was driving the truck in jail if arrested unless it was one of his own men and, in that event, to let the matter rest until morning.

If this truck and wire were taken by some thief, Griffin or any other person, Tucker would not be liable.

The plaintiff has a theory that Tucker was engaged in some sort of black market operation, and that the wire was being delivered to some person in pursuance of such operation and consequently in furtherance of Tucker's business. There is no proof to support such a theory.

I do not think that there is any fact shown in the record from which it may logically be inferred that the driver of the truck was on a mission for the owner within the scope of his employment on the night of this accident.

I respectfully enter my dissent to the very able opinion prepared by Judge Adams and concurred in by Judge Swepston.