McCRUM *v.* WEIL & CO.

125   2̅9̅7̅<br>f136  314

DANGEROUS PREMISES — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

> \* Plaintiff's decedent went to the store of the defendant, a mercantile corporation, and was invited into the shipping room to transact his business with the shipping clerk. The room was somewhat dim; the electric light was burning over the shipping clerk's desk. The clerk met deceased and another customer at the door of the shipping room. The clerk walked to his desk, followed by this other customer and the deceased, who was the last of the three. The decedent was 63 years of age. The course in which he was invited to walk was in close proximity to the open shaft, which was left unguarded, into which he fell, and was killed. *Held,* that the question of the contributory negligence of the deceased was for the jury.

Error to Wayne; Waite, J. Submitted October 3, 1900. Decided December 4, 1900.

Case by Catherine McCrum, administratrix of the estate of Henry McCrum, deceased, against Weil & Company, for negligently causing the death of plaintiff's intestate.

---

\* Head-note by GRANT, J.

From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

Plaintiff's decedent went to the store of the defendant company, went into its shipping room, fell into the open shaft of an elevator, and was killed. The name of the shipping clerk was Stowell. Mr. McCrum and Mr. Newman went to the store about the same time (midday) on business. A clerk named Marx took them to or near the door of the shipping room, called Mr. Stowell, and told him there were two gentlemen for him to wait upon. Mr. Newman handed Stowell a receipt for a mattress. Stowell, followed by Newman, went to his desk, and, while the two were in conversation, heard a fall, looked around, saw that Mr. McCrum was not in the room, and heard a moaning in the basement. They went to the shaft, and there found Mr. McCrum lying at the bottom. He was unconscious, and died shortly after. No one saw deceased after entering the shipping room, and how he fell into the shaft is matter of conjecture. This shipping room was 10 feet high, 30 feet 4 inches long, and 14 feet 4 inches wide. There were two windows in the rear wall, each 3 feet 9 inches wide, 3 feet 4 inches from the floor, and extending to the ceiling. Each was about 6 feet from the outside wall on each side. Between the windows was a door 5 feet 1 inch wide, which was open at the time. The elevator shaft is in the northwest corner of the room, is 8 feet 3 inches wide, and 6 feet 4 inches deep. From the left edge of the door, where the deceased entered, to the elevator shaft is 9 feet. The shipping clerk's desk was in the northeast corner back of the elevator, and the distance from the desk to the corner of the shaft was 26 inches. The sides of the elevator are inclosed. The front is open to the ceiling. Back of the shipping room, and running past the door and windows, is an alley 18 feet wide, with a one-story building opposite. An electric light was burning at the time in the corner of the room over the shipping clerk's desk. The elevator had just

gone to the story above with a load of goods. There was a gate 3 feet high in front of the shaft, which was pushed up and down by hand. This gate the parties using the elevator had neglected to close. The negligence charged is the failure to protect this shaft by closing the gate.

The court directed a verdict for the defendant, on the ground of contributory negligence on the part of deceased. The defendant introduced no testimony. The principal disputed question of fact in the case is whether the space between the door and where deceased entered the elevator shaft was substantially unobstructed, or was obstructed by goods, leaving a narrow pathway from the door to the clerk's desk. Mr. Stowell testified that the place was obstructed, but that a passageway about 3 feet wide was left from the door to his desk, while Mr. Newman testified that the space was practically clear. Stowell and Newman do not agree upon one other question. Stowell testifies that the elevator was in sight, going up, when Newman and deceased entered theroom, while Newman says it was not in sight.

*Flowers & Moloney* and *Oscar M. Springer,* for appellant.

*Keena & Lightner,* for appellee.

Grant, J. (*after stating the facts*). We think the learned circuit judge erred in taking the case from the jury. The deceased was invited into this place. He had a right to follow the clerk to the desk for the transaction of his business. He was 63 years old, and wore glasses. Some of the witnesses testified that it was not very light in the room when they went in, and, though they "could see all right," yet they testified that it was quite dim. A light was burning, which would shine directly in the eyes of the deceased, who was approaching, unless his eyesight was obstructed by those walking ahead of him. The course in which he was invited to walk was in close proximity to the open shaft. While all the other wit-

nesses testified that they could see the shaft, yet their eyesight may have been better than was that of the deceased. The defendant cannot escape liability by showing that young persons, whose eyesight was good, could see and avoid the danger, but was equally bound to protect the place against those who came to its place of business with eyes more or less dimmed by age or other causes. It invited the general public into its place of business. It was required by the law to keep such place reasonably safe for all classes whom it invited.

The case should have been submitted to the jury. Judgment reversed, and new trial ordered.

The other Justices concurred.