## EAST TENNESSEE LIGHT & POWER CO. v. GOSE.—130 S. W. (2d), 984.

Eastern Section. March 8, 1939.

Petition for Certiorari denied by Supreme Court, July 1, 1939.

Frantz, McConnell & Seymour, of Knoxville, Curtin & Haynes, of Bristol, and H. E. Widener, of Bristol, Va., for plaintiff in error.

Burrow & Burrow, of Bristol, and T. L. Hutton and George B. Kreger, both of Abingdon, Va., for defendant in error.

McAMIS, J.   Plaintiff below, G. C. Gose, sustained personal injuries when he fell through an open trap door in the grocery store of Kelly Godsey in Bristol, Tennessee, on July 12, 1937.

The declaration, containing a single count, charges that the defendants Kelly Godsey and East Tennessee Light and Power Company negligently left said trap door open and that plaintiff, who had entered the store for the purpose of selling vegetables, as he had often theretofore done, having no knowledge of the opening or pitfall thus negligently created, stepped or fell into the opening and was precipitated with great force into the basement, landing on a concrete floor and sustaining the injuries for which he sues.   Both defendants filed separate pleas of the general issue and, at the conclusion of all the evidence, separately moved the court for a directed verdict.   Both motions were overruled and the case submitted to the jury with the result that the jury returned a verdict in the sum of $3,500 against the defendant East Tennessee Light and Power Company and in favor of the defendant Godsey.   Its motion for a new trial having been overruled, the East Tennessee Light and Power Company, herein referred to by name or as defendant, has appealed in error to this court.

Plaintiff has filed the record for writ of error and has assigned as error the action of the court in suggesting a remittitur of $500 which was accepted under protest.   Defendant's assignments will be first considered.

Plaintiff was sixty-six years of age at the time he was injured on July 12, 1937.   He entered the store of Kelly Godsey for the purpose of selling beans or exchanging them for groceries.   He had been in

the store on several previous occasions over a period of several years for the purpose of selling vegetables to Godsey but had never succeeded in making any sales. He had no express invitation to visit the store for this purpose. He was rendered unconscious by the fall and remembers little of what occurred after he entered the store. The clerk at the meat counter testified that he saw him enter and walk up to the meat counter where he inquired about selling beans. The clerk at the meat counter advised him that the buying was done on the other side of the store, and he walked over in that direction. In doing so he fell into the trap door leading into the basement. On the date in question the Power Company, in response to a call from Godsey, had sent two of its repairmen to Godsey's store for the purpose of making repairs on certain refrigeration machinery located in the basement of the store and used by Godsey in the operation of his store. The trap door was the only means of access to the basement. The repairmen had been in the basement of the store on previous occasions for the same purpose and, upon entering the store, they went to the trap door, raised and removed it, leaving an opening of about three and one-half feet by four feet near the center of an aisle or passageway between counters used by customers in examining goods on display and in passing from one part of the store to another.

Upon the lid being removed one of the repairmen descended to the basement, the other remaining near the opening to place, or assist in placing, obstructions in the aisle for the purpose of blocking off the opening. On the side from which plaintiff later approached, an empty orange crate and another box of similar dimensions were placed across the aisle in front of the opening. The other repairman then descended into the basement where he was at work when plaintiff fell.

Plaintiff testified that, because of defective vision, he could not see well after coming into the store; that he could see well enough to see a man in front of him but that he could not recall seeing any of the clerks in the store after he entered. Approaching the opening in the aisle from the direction of the meat counter he passed along a cake display rack and the proof is that the two boxes placed across the aisle as a barricade would not have been visible to him until he passed around the end of the cake rack and was within a step or two of the boxes. It appears that the boxes were placed within one or two feet of the edge of the opening.

Because of plaintiff's inability to remember events immediately preceding the fall, it does not appear whether he saw the crates and stepped over them, failing to recognize that they were placed there as a warning, or stumbled over them and fell into the opening. It should be stated, however, that neither of these boxes were found in the basement and it is argued in behalf of plaintiff that if he had stumbled into the boxes, being of light weight, they would have been

pushed in the direction of the opening and would have been found in the basement after plaintiff fell. From this it is argued that the boxes were either not placed in front of the hole as insisted by defendant or that sufficient room remained for plaintiff to walk around them and into the opening.

In behalf of defendant it is insisted that the barricades, consisting of the two boxes mentioned, were sufficient to give notice of the danger to all persons using the store in full possession of all their faculties and exercising ordinary care for their own safety; that plaintiff was guilty of barring contributory negligence in walking into a place of danger without looking and that, in any event, plaintiff was a mere licensee to whom it owed only the duty of abstaining from willful negligence.

■ Clearly, the opening left by the removal of the trap door in the middle of an aisle frequented by the general public, whether as invitees or licensees, constituted a peril the probable consequences of which should have been foreseen by one exercising ordinary care and caution and, we think, whether the two boxes referred to constituted such a barricade or warning as an ordinarily prudent and cautious person would have provided under the same circumstances to give warning of the danger was a question to be determined by the jury.

■ Defendant owed the duty of providing a barricade strong enough to withstand the force of a person moving around in the store and who might, without negligence on his part, while engaged in shopping or other business of a distracting nature, come in contact with, or press against such barricade. Rosenbaum v. Shoffner, 98 Tenn., 624, 632, 633, 40 S. W., 1086; 45 C. J., sec. 296, pp. 871, 872.

■■ We think the jury well warranted in concluding that two small boxes of the type already described placed on a smooth floor and easily pushed about were wholly insufficient to meet the ordinary exigencies of prevailing conditions. Persons visiting a store of the type operated by the defendant Godsey have a right to assume that the premises are free of such dangers and are not guilty of contributory negligence in failing to look for such pitfalls or even for barricades marking off such places and, if it be assumed that plaintiff saw these boxes or that he failed to see them when he should have seen them if in the exercise of ordinary care for his own safety, it does not necessarily follow that their presence on the store floor would have apprised him of the danger. The boxes were of a type commonly found in grocery stores and sometimes left on the store floor after the removal of their contents. Though it does not appear, plaintiff may have seen the boxes and have stepped over or around them without being conscious of any danger. However, he has no recollection of having seen them and this may be accounted for by the fact that they were not visible to him until he came around the

end of the cake rack. When he reached that point he may have been looking for the clerk on the other side of the store and the jury could have found that he was not guilty of any negligence in taking his eyes off the floor while looking for the clerk.

We think defendant should have anticipated that persons would use the store floor in just such a manner while the lid to the trap door was off and, to say the least, it was a jury question whether defendant discharged its full duty and whether plaintiff was guilty of any contributory negligence proximately resulting in his injuries. The measure of care required both of the plaintiff for his own safety and protection and of the defendant will be further discussed in disposing of the assignments of error relating to certain portions of the court's charge and the refusal of the trial judge to charge certain special requests tendered by defendant.

It is insisted that the court erred in refusing to charge the jury, as requested by defendant, that the defendant would not be liable to plaintiff if it appeared from the evidence that defendant exercised such precaution and care in connection with said trap door as to give such warning and protection that a person in possession of all his faculties and observing due care would not have fallen into said opening and that defendant would not be liable if plaintiff, because of defective vision, did not observe such warning.

As applied to this case, we think the trial judge was correct in declining, as unsound in principle, the charge requested. The converse has been held in a number of cases, including Rollestone v. Cassirer, 3 Ga. App., 161, 59 S. E., 442; Brown v. Stevens, 136 Mich., 311, 99 N. W., 12; McCrum v. Weil & Co., 125 Mich., 297, 300, 84 N. W., 282, 283.

The last of these cases involved the liability of a storekeeper who made the same question now made by defendant. The court said:

"The defendant cannot escape the liability by showing that young persons, whose eyesight was good, could see and avoid the danger, but was equally bound to protect the place against those who came to his place of business with eyes more or less dimmed by age or other causes. It invited the general public into its place of business. It was required by the law to keep such place reasonably safe for all classes whom it invited."

In Brown v. Stevens, supra, an old man with defective vision wa·s injured by falling into an opening while shopping in defendant's store. It was held that unless plaintiff received a warning of danger he was not guilty of contributory negligence in walking on the store floor without looking, relying upon the assumption, held to be justified, that the store floor was in safe condition.

In the absence of knowledge of danger such a person may assume that he is not exposed to injury which can come to him only

from a breach of the duty which others owe to avoid injuring him. 45 C. J., 996, sec. 549.

It is next insisted that the court erred in refusing to charge the jury as follows:

''The court instructs the jury that it is the duty of everyone to exercise ordinary care for his own safety; and the fact that a person may have bad eyesight is no excuse for his failure to exercise ordinary care; on the contrary, common prudence requires that a person whose vision is bad should exercise far greater care, in proportion to the danger to which men in general are constantly exposed, than is required of those in full possession of the faculty of sight.''

The above is taken from the case of Stewart v. Nashville, 96 Tenn., 50, 33 S. W., 613, and is, in the abstract, a correct statement of the law but the requested charge omits any reference to the facts of the case on trial and, particularly, to plaintiff's right to assume that the floor was free from defects and pitfalls improperly guarded. The omission of such reference would make the requested charge misleading and unfair to plaintiff. For this reason we think the court committed no reversible error in declining the request.

Complainant is also made of the failure of the court to distinguish in the charge to the jury between the duty owing an invitee and that owing a mere licensee. We think defendant was not harmed by this action.

Without deciding the point, if it be assumed that defendant is entitled to invoke the distinction between the duty owing an invitee and that owing a licensee it would still be liable if, with imputed knowledge that licensees of Godsey were likely to use the aisle which had theretofore been safe for passage, a pitfall or other danger to such licensees resulted from its act in changing the status from that of a safe passageway to one of danger without timely and adequate notice to such licensees of the change in conditions. In such case the negligence would not consist in the act of such change, but in the failure to warn the licensees of the change. See Westborne Coal Co. v. Willoughby, 133 Tenn., 257, 266, 267, 180 S. W., 322, citing Williams v. Nashville, 106 Tenn., 533, 63 S. W., 231.

Finally, it is insisted that the verdict of the jury exonerating Godsey extinguished any liability on the part of the Power Company and that the court erred in charging the jury that their verdict might be in favor of both defendants or against only one.

It appears that the trap door was left open solely for the safety and convenience of the repairmen, defendant's agents, working in the basement. Defendant's agents raised the trap door and removed it to one side thus creating the opening through which plaintiff fell. Apparently the only thing done by Godsey's clerks was to furnish the two boxes and, possibly, assist in placing them before the

opening. The repairmen, however, appear to have been the principal actors both in creating the danger and in providing or placing an insufficient guard around it. At least, the jury was warranted, under the proof, in so finding and we find the assignments relating to this question without merit.

■ We think the amount of the verdict, as reduced by the trial judge, not excessive under that view of the medical testimony and other proof as to plaintiff's disability most favorable to plaintiff, the successful party before the jury. The insistence that the verdict is still excessive appears to be predicated upon the supposition that plaintiff's disability resulting from heart trouble is not in any way connected with the fall. It is admitted that plaintiff has a bad heart at the present time and there is no dispute that he is totally disabled, as we understand.

There is medical testimony to the effect that plaintiff was not afflicted with heart trouble before the fall; that he had a severe bruise across his chest as a result of the fall and that he developed a bad heart immediately after the fall. There is considerable medical evidence, introduced by defendant, that the fall had nothing to do with this condition, but it was for the jury and the trial judge to weigh this testimony against the testimony introduced in plaintiff's behalf and the circumstance that he developed a bad heart immediately following the fall. Moreover, it seems to be conceded that a shock such as plaintiff received might accelerate the pulse rate to the point of affecting the heart.

Plaintiff is a farmer and before the fall was able to carry on his farming operations without assistance. Since the fall he has been forced to rent his farm and has been unable to do any of the work himself. The injuries he sustained are shown to have been painful and probably accelerated the rheumatism or neuritis with which he suffered at the time of the fall. It is shown that he is unable to change his clothing without assistance since the fall though he was able to do so before he was injured.

■ In view of plaintiff's age and his rather short expectancy in engaging in gainful pursuits of the kind for which he is qualified, we find no error in the action of the court in suggesting a remittitur of $500. The action of the trial court in suggesting a remittitur is entitled to great weight upon appeal. Nashville Ry. etc. Co. v. Harrison, 5 Tenn. App., 22. All assignments upon that action of the court are overruled and it results that the judgment below is affirmed with costs.