PIERCE v. STIRLING.

5-691                                                          279 S. W. 2d 840

Opinion delivered May 30, 1955.

*Rose, Meek, House, Barron & Nash, Phillip Carroll,* Little Rock, for appellant.

*Robert J. White,* Russellville, for appellee.

J. Seaborn Holt, J.   March 31, 1954, appellant Pierce, a resident of Albuquerque, New Mexico, brought suit against appellee Stirling, an Arkansas resident, alleging in his complaint that: "During a period including February, 1949, to July 29, 1949, plaintiff was a General Agent for Reserve Loan Life Insurance Company of Texas and defendant was appointed by the plaintiff as a special agent of that company.

"During the aforementioned period, Reserve Loan Life Insurance Company of Texas, at the request of the plaintiff (Pierce), made cash advances to the defendant (Stirling) as follows:   . . .," in the amount of $2,125.

"On July 29, 1949, Reserve Loan Life Insurance Company of Texas (including its accounts receivable) was purchased by Southland Life Insurance Company. Plaintiff and defendant continued in the same capacity with the new company.

"Thereafter, the following cash advances were made to the defendant by Southland Life Insurance Company at the request of the plaintiff," in the amount of $600.

"The total of all advancements made to defendant is $2,725.   Defendant is entitled to credits in the amount of $903.15, leaving a balance owing of $1,821.85.

"On April 25, 1951, it became apparent that the defendant was not going to liquidate the account and the last mentioned balance was transferred to the account of

the plaintiff who thereby became primarily obligated under the terms of his contract with the insurance company, and said account was paid by the plaintiff.''

Stirling answered denying every material allegation in the complaint and alleged that he was employed by Pierce at a guaranteed salary of $300 per month for a period of three years beginning February 1949, that on July 25, 1949, his contract of employment by mutual agreement with Pierce was terminated and all obligations thereunder cancelled and settled.

''That under the terms of said agreement, the defendant was to be paid a guaranteed salary of $300 per month, against which would be credited all earnings of the defendant from the sale of life insurance, and that in the event the earnings or commissions should exceed the minimum guaranteed salary, the excess should be paid to the defendant.

''That upon the sale of the Reserve Loan Company to the Southland Company, a complete account and satisfaction was had by plaintiff and defendant, and thereafter, plaintiff became general agent for the Washington National Life Insurance Company, and a new contract was entered into by plaintiff and defendant, which continued until the defendant left the employment of plaintiff in the year of 1952.'' He further pleaded as a defense the statute of limitations as a complete bar.

Trial was had and at the close of all the testimony the court granted the motion of Stirling for a directed verdict in his favor on the ground that the debt was barred by the statute of limitations as a matter of law. This appeal followed.

For reversal appellant says: ''The Court erred in holding that the plaintiff's (Pierce) cause is barred by the Statute of Limitations because plaintiff's original relationship was one of surety to the defendant (Stirling) on the defendant's obligation to the Reserve Loan Life Insurance Company. Plaintiff made payments on his principal's obligation before the Statute of Limita-

tions had passed on his principal's debt, tolling the Statute of Limitations as to him, the surety. Thus, the payments later made by the surety, which are the subject of this suit, were all made within the period of the Statute of Limitations. . . .

"This suit, brought by the surety to recover from his principal on the implied obligation of indemnity, was filed within three years of the time of payment by the surety." In short, Pierce argues that the trial court erred in taking from the jury the disputed fact question, (a) whether appellant's relationship to Stirling was one of surety for Stirling on Stirling's alleged obligation to the insurance company, and also, (b) whether Pierce had released Stirling from any and all liability. The testimony on these two issues appears to be conflicting.

It is well settled that when this court is called upon to determine the correctness of the action of a trial court in directing a verdict for either party, the rule is that where there is substantial evidence to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury, and in determining this question that view of the evidence must be taken that is most favorable to the party against whom the verdict is directed. *Gray* v. *Magness,* 200 Ark. 163, 138 S. W. 2d 73, and cases there cited. Guided by the above rule, after reviewing the evidence, we have concluded that the court erred in taking the case from the jury.

In *Fausett Builders, Inc.* v. *Globe Indemnity Co.,* 220 Ark. 301, 247 S. W. 2d 469, we defined surety in this language: "Suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another. . . . The terms of the contract of which the surety promises performance must be read into his own contract. The principal's contract and the bond or undertaking of the surety are to be construed together as one instrument. . . . The suretyship contract must be express, as the surety's

promise will never be enlarged to cover the implications growing out of the language employed.''

Pierce testified in effect that he arranged with his principal, Insurance Company, to make the advances by its voucher direct from the insurance company to Stirling, and they were so made. They were not made first to Pierce and then advanced to Stirling. He testified that he acted only as surety for repayment to his principal insurance company of all these advances. Pierce's general agent's contract provided: ''RESPONSIBILITY: You will be fully responsible for the life insurance accounts and activities of agents appointed by you or transferred to you by the Home Office.'' The sequence of happenings after the last advance made by the insurance company on September 15, 1949, appear to be: From September 15, 1949, to April 25, 1951, credits were applied by the insurance company to the account from Stirling's renewal commissions. Pierce was called upon by the company to satisfy Stirling's indebtedness and it applied Pierce's renewal commissions on Stirling's account to the extent of $848.89 during the remainder of 1951. During 1952 $930.92 of Pierce's commissions were applied on the account and on January 1, 1953, a balance of $42.04 due on the account was taken from Pierce's commissions and the account paid in full. February 16, 1953, Pierce called upon Stirling to reimburse him (Pierce), and Stirling refused. Pierce then, as indicated, sued Stirling on March 31, 1954.

While Pierce's general agent's contract with his principal insurance company was entered into in New Mexico, the Arkansas statute of limitations, the law of the forum, must and does control. *Chicago, R. I. & Pac. Railway Co.* v. *Lena Lumber Co.*, 99 Ark. 105, 137 S. W. 562. See, also, 11 Am. Jur., Conflict of Laws, § 191, p. 505.

Pierce's testimony which is sharply disputed by Stirling was that the advances, or loans, were made to Stirling and that he, (Pierce), guaranteed their repayment to the company, and that he had never released Stirling from any liability. It appears that Pierce was called upon by the company to pay the balance due on Stirling's

account about nineteen months after the last advance was made to Stirling, and beginning on April 25, 1951, Pierce's renewal commissions were credited as indicated on the Stirling account until it was paid in full in January, 1953. Thus more than four and one-half years had passed since the last advance to Stirling when suit was filed. If, as Pierce testified, the advances were made to Stirling by the company and Pierce as surety guaranteed their repayment, then his cause of action against Stirling to be reimbursed by Stirling, if Pierce had any such right, was not according to Pierce's testimony, then barred. The fact that the statute of limitations might bar any claim of the company against Stirling did not necessarily prevent Pierce, if he were in fact a surety for Stirling, and after he had paid the account to the company, from claiming that Stirling should indemnify him, within the three-year period of limitations. "It is held in many jurisdictions that if the surety pays a debt which is at the time barred by limitation as against the principal, but is a valid obligation against the surety, such surety may recover against the principal, or against his estate in case of his death. The right of action in favor of the surety arises when he pays the debt, and is not based upon the original debt itself, but upon the implied contract of indemnity which exists by law between the principal and surety." 50 Am. Jur. 1062 (Suretyship, § 237). And, in Elder, Stearn's Law of Suretyship 523 (5th Ed., 1951), we find this language: "Where, for example, the running of the period of limitations has barred recovery from the principal, but not from the surety, the non-liability of the former does not impair the surety's right of indemnity. Thus, where no claim is asserted by the holder of a note against the maker, but judgment is obtained against the surety, who pays the judgment after the right of action by the holder against the maker is barred by the statute of limitations, the surety may recover from the principal.

Accordingly, the judgment is reversed and the cause remanded for a new trial.

GEORGE ROSE SMITH, J., not participating.