MILLER *v.* F. W. WOOLWORTH Co.

5-3392                                        384 S. W. 2d 947

Opinion delivered November 30, 1964.

[Rehearing denied January 11, 1965.]

*G. E. Snuggs,* for appellant.

*Shackleford & Shackleford,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Mrs. Goldie Miller, instituted suit[1] against F. W. Woolworth Company, appellee herein, seeking damages for physical injuries, alleged to have been sustained when she, while a customer in the Woolworth Store, suffered a fall. Appellee answered, denying liability, and the case proceeded to trial. At the conclusion of appellant's testimony, Woolworth moved for a directed verdict, which motion was denied. Appellee then placed several witnesses on the stand, and again moved for a directed verdict at the conclusion of all the evidence. The motion was again denied, and the case was given to the jury. A verdict was

---

[1] J. B. Miller, husband of Mrs. Miller, is also a party to the suit, and is an appellant herein, but inasmuch as the testimony, hereinafter set forth, deals only with Mrs. Miller, we will continue to use the singular term, "appellant."

returned for the appellee, and from the judgment so entered, appellant brings this appeal.

According to Mrs. Miller's testimony, she was shopping in the Woolworth Store on October 6, 1962, at about 4:20 P.M. After leaving some purchases at the checking counter, she went to the back of the store to select some other articles that were on sale. While returning to the counter, she fell to the floor injuring herself. In describing the accident, Mrs. Miller said:

"Well, after I picked up the articles I wanted I started back to the check stand with them and for some reason my foot just went sliding like you do and I wanted to grab this counter, thinking I could steady myself, and I realized they've got these little old glass things sitting up on them. You know it's a little extension, I suppose to keep children from reaching up and meddling, and when I grabbed them I could feel it sort of give under my hands and I turned loose quickly, because I felt like the glass would break in my hands. Of course, when I turned loose I just tumbled and sat down and fell down on this side."

She stated that she could see a "long sort of shiny, skiddy-looking place;" that it did not appear to be "new;" that it wasn't wet. She testified that she did not get any dirt on her clothes, but her hands were gritty and dirty "like they would be, I guess, in a public place." This was all the evidence offered by appellant relative to how the fall occurred.[2]

William E. Ball, Pauline Armer, James Richmond, and Mrs. Floy Carclock, employees of the company, and Billy Joe Campbell, a patrolman with the El Dorado Police Department, testified on behalf of appellee. Mr. Ball stated that he examined the floor where Mrs. Miller

---

[2] A physician testified in regard to the injuries sustained by appellant, but that point is not at issue here. Appellant's husband also testified about her physical condition, and William E. Ball, manager of the store, called by appellant, testified briefly to the effect that he had sole supervision and control of the store, and followed rules and regulations set by the Woolworth Company. Ball also testified in response to interrogation by appellant's counsel, that the store sold lunches and candies.

had fallen, and saw no evidence of a hazardous condition; that the floor had just been swept, and was clean and dry. James Richmond, the janitor, testified that he completed sweeping the store about 4:15, including the aisle where appellant's fall occurred. The witness stated that he used a push broom, made of cloth, and treated with an oil; that he saw nothing on the floor that appeared to be slick or dangerous. Mrs. Armer testified that the sweeping of the floor had been completed at the time of the alleged injury. Mrs. Carelock, a clerk, stated that she went to the spot where Mrs. Miller had fallen, and examined the floor closely, but could find nothing that would occasion a fall. She testified that the floor was clean and dry, and that she observed no substance of any kind, nor did she see any skid marks. Mr. Campbell, the patrolman, stated that he was in the store at the time of the fall, and that he helped pick Mrs. Miller up off the floor. He said the floor was clean and dry, and that he did not see anything "slick," nor did he see a streak or skid mark. In fact, on cross-examination, he was asked, "Are you telling the jury that Mrs. Miller just fell down on the floor and hurt herself, no cause at all? Is that what you're telling the jury?" Mr. Campbell replied, "Yes, Sir." This completed the testimony, as it related to the accident.

Appellant first states:

"The ruling of the court on defendant's motion for directed verdict in its favor, made at the conclusion of plaintiff's testimony in chief, being a question of law and not of fact, settled the issue of 'presumption of negligence' on the prima facie showing made by plaintiff's testimony."

In 38 Am. Jr., Section 307, Page 1004, we find:

"No presumption of negligence on the part of a proprietor of a shop or store arises from the mere fact that a customer * * * sustains a fall while in a store, the doctrine of *res ipsa loquitur* not being applicable in such a case."

In *Deason* v. *Boston Store Dry Goods Company,* 226 Ark. 667, 292 S. W. 2d 261, quoting from an earlier case, this court said:

" 'It seems to be uniformly held in cases of this character that where a customer falls as a result of slipping upon some foreign object or substance, and there is no substantial proof showing that the store owner knew of its presence, or in the exercise of ordinary care should have known of its presence, there can be no recovery. In other words, it is necessary to show by substantial testimony the length of time the object had been on the floor or that it got there through the negligence of the defendant or its employees. Negligence is never presumed, but must be proved by the party alleging it.' "

We find no merit in this contention.

The next argument for reversal is somewhat unique. Quoting from appellant's brief:

"The ruling of the court on defendant's motion for directed verdict in its favor, at the conclusion of all of the testimony adduced in the trial, being a question of law and not of fact, settled the issue of the sufficiency of defendant's testimony to overturn the prima facie case of negligence made by plaintiffs' leaving for the consideration of the jury only the fact issue of quantum of recovery."

Appellant's argument is erroneous. The trial court's refusal to direct a verdict for appellee did not have the effect of establishing negligence on the part of the company; the ruling only meant that, in viewing the evidence in the light most favorable to the party against whom the motion was directed (appellant), the court concluded there was sufficient evidence to make a jury question. See *Pierce* v. *Stirling,* 225 Ark. 108, 279 S. W. 2d 840.

In Volume 88, C.J.S., Section 264 (b), Page 722, we find:

"Where a motion to direct verdict is overruled, the trial continues as if it had not been made; no judgment

is thereupon rendered against the adverse party nor may the court, because it has overruled the motion, thereupon direct a verdict for the adverse party on the ground that the motion admitted the truth of his evidence. * * * A refusal of the motion means only that there was sufficient evidence to prevent a direction, * * *''

In 53 Am. Jur., Section 362, Page 292, it is said:

''* * * The trial court should not assume to direct a verdict when its ruling would require it to pass upon the credibility of witnesses and waive testimony, or would require it to resolve conflicts in the evidence; whenever there is credible evidence from which a reasonable conclusion can be drawn in support of the claim of the party against whom the motion is made, the motion must be denied and the case submitted to the jury.''

In the Texas case of *Adam* v. *Adam,* 127 S.W. 2d 1001, the court held:

'' 'The effect of the motion made by the defendants to instruct the jury to find for them has practically the same effect as a demurrer to the evidence in calling for the opinion of the court on the legal sufficiency of the proof, but it does not have the effect to withdraw the case from the jury. If a motion be overruled, the trial must proceed as if it had not been made; and the court cannot, because the motion has been overruled, instruct the jury to find for the plaintiff, upon the ground that the motion admitted the truth of the evidence adduced.' ''

Numerous cases hold likewise; in fact, we know of none to the contrary.

Appellant finally contends that there is no substantial evidence to support the verdict. We do not agree. Aside from the testimony of the store employees, Campbell, the policeman who happened to be in the store, and who apparently was a completely disinterested witness, testified that the floor was clean and dry, and that he observed no streak, skid mark, or slick substance on the floor.

Affirmed.