**Mildred Redding EARNHART, Plaintiff,**

v.

**J. C. PENNEY CO., INC., Defendant.**

**No. FS–75–167–C.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

June 20, 1977.

Douglas W. Parker, Fort Smith, Ark., for plaintiff.

Charles R. Ledbetter, Shaw & Ledbetter, Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

On November 19, 1975, plaintiff, Mildred Redding Earnhart, a resident and citizen of Fort Smith, Arkansas, filed her Amended Complaint against defendant, J. C. Penney Co., Inc., a foreign corporation duly qualified to do business in the State of Arkansas, seeking to recover substantial actual and punitive damages in excess of Ten Thousand and No/100 ($10,000.00) Dollars, exclusive of interests and costs for personal injuries allegedly sustained by plaintiff on December 23, 1974 in a fall in the store of defendant, proximately caused by certain alleged acts and omissions of the defendant and its employees.

Jurisdiction is based upon diversity of citizenship and the amount involved, 28 U.S.C.A. Sec. 1332, is admitted by the defendant in it answer filed December 10, 1975. The Court has jurisdiction of the parties and the subject matter of this action.

All allegations of negligence contained in the plaintiff's Amended Complaint were specifically denied and the defendant alleged that plaintiff was guilty of negligence in failing to use ordinary care for her own safety and in failing to watch and observe what she was doing; that the proximate cause of any alleged damages for injuries suffered by plaintiff resulted from her carelessness and negligence which is pleaded as a bar to her claim.

The defendant further alleged in the alternative, that any damages that might be awarded to the plaintiff should be diminished in proportion to her own negligence and carelessness under the Arkansas Comparative Negligence Statute.

Since all events relative to the claims of plaintiff and the alleged defense of defendant occurred in Arkansas, the law of Arkansas is controlling.

The Supreme Court of Arkansas has been fairly consistent in its considerations and many decisions of "slip and fall" cases and it is not necessary to burden this Opinion with excessive citations.

In *Charlene Moore v. J. W. Willis d/b/a The Friendly Butcher*, 244 Ark. 614, 426 S.W.2d 372 (1968), the Court, at page 616 of 244 Ark., at page 373 of 426 S.W.2d said:

"No presumption of negligence arises from the mere fact that a customer sustains a fall while in a store. *Miller v. F. W. Woolworth Co.*, 238 Ark. 709, 384 S.W.2d 947. A storekeeper is not an insurer of his patrons against any and all hazards which may be encountered on his premises. *Kroger Grocery & Baking Co. v. Dempsey*, 201 Ark. 71, 143 S.W.2d 564. He is liable to a patron who is injured as a result of slipping on some foreign substance or object on the floor where it is shown by the evidence, or [it] is reasonably inferable therefrom, that the foreign matter was negligently placed or left on the floor by the storekeeper or one for whose acts he is responsible, or that the matter had remained on the floor a sufficient length of time that the storekeeper knew, or, in the exercise of ordinary care, should have known of its presence. *Kroger Grocery & Baking Co. v. Dempsey, supra*; *Deason v. Boston Store Dry Goods Company*, 226 Ark. 667, 292 S.W.2d 261, 61 A.L.R.2d 170."

In *Davis v. Safeway Stores, Inc.*, 195 Ark. 23, 110 S.W.2d 695, the court over the objection of plaintiff (appellant) gave instructions No. 4 and No. 5. In No. 4, the Court told the jury that it was the duty of plaintiff to discover any defects in the condition of the floor, such as oil upon the floor, if same were open and obvious to a person of normal faculties, and if you find the evidence in this case that plaintiff was caused to fall because of any conditions of the floor which was open and obvious to a person of normal faculties, and through negligence on her part she failed to discover such defects and that such failure caused or contributed to cause the injuries complained of, then she was guilty of contributory negligence.

In discussing instruction No. 4, the court, beginning at bottom of page 24 of 195 Ark., of page 696 of 110 S.W.2d said:

"As to instruction No. 4, we think it places too great a burden upon appellant. It made it her duty to discover the oil upon the floor, 'if same were open and obvious to a person of normal faculties.'"

It was contended by appellee that instruction No. 4 is a correct declaration, but even though it is not, that it was the duty of appellant to point out to the trial court the error complained of. A specific objection by appellant to this instruction sufficiently pointed out the error. The plaintiff objected specifically "because it is an improper declaration of law concerning the duty of the plaintiff to exercise ordinary care for her own safety in that it places upon the plaintiff the burden to discover any defects in the condition of the floor.

The court in considering the objection of the plaintiff said:

"The only burden placed upon appellant was to exercise ordinary care for her own safety while in the store. Of course, if the danger was so open and obvious that knowledge of it and appreciation of it should be imputed to her, then appellee would have been entitled to an instructed verdict.

We would not reverse the case, however, for the giving of this instruction because the instructions, taken as a whole, show that the only duty imposed upon appellant was to exercise ordinary care for her own safety while in the store. We think, however, that it would be better, upon a new trial, to omit said instruction and to give an instruction similar to the one in *Hurley v. Gus Blass Co.*, 191 Ark. 917, 88 S.W.2d 850."

In the trial of the case, the defendant contended that plaintiff was over-weight, had swollen or weak ankles or wore unusually high heels and the trial court, in instruction No. 5, told the jury that if "plaintiff fell on the floor of defendant's store because of lameness, over-weight or high heels, which floor was ordinarily safe for a person of ordinary weight without lameness and with reasonably designed heels, the defendant is not liable to the plaintiff because of the injuries complained of."

The Supreme Court, beginning at bottom of page 25, 195 Ark., of page 696 of 110 S.W.2d said:

"It must be remembered that appellant (plaintiff) was an invitee in the appellee's premises. It owed a duty to the public, including appellant, no matter what her over-weight might be, to exercise ordinary care to keep its premises in a reasonably safe condition for the safety of all persons who might come into said store on business. . . . Since it invited the general public into its place of business, the law requires it to exercise ordinary care to keep such place reasonably safe for all persons whom it invited. *McCrum v. Weil & Co.*, 125 Mich. 297, 84 N.W. 282. See, also, sections 75, 76 and 77, 45 Corpus Juris, p. 701, and cases there cited."

The judgment of the trial court was reversed.

The chief contentions of the parties and the evidence will now be discussed, respective briefs are as follows:

On page five of plaintiff's brief, her attorney states:

"The plaintiff, Mildred Redding Earnhart, was in the defendant's store two days before Christmas doing Christmas shopping with her mother and while walking down one of the aisles in furtherance of her shopping, that she slipped on a slippery substance and fell resulting in her injury. We submit that defendant is liable and responsible for the injuries sustained by virtue of the fact that the liquid upon the floor, being described by the defendant's own employee as a slippery substance, was known to be upon the floor for sufficient time for the defendant to have cleared same or in the alternative to have blockaded the area or otherwise guarded the area until such time as the substance could have been removed from the floor and thereby preventing the injury to plaintiff."

On page one of defendant's brief, its attorney states:

"The salient issue from a factual standpoint is whether or not the substance was on the floor a substantial period of time and whether or not the defendant, acting through its agents, servants and employees, failed to use ordinary care to clean up the substance or take reasonable steps to clean up the substance. It is well recognized, without citation to case law, that the the defendant owes a duty to the public and its customers to use ordinary care and take reasonable precautions to prevent spills on the floors used by its customers and to take ordinary care to remove or clean up such spills after having been notified of their existence and to use ordinary care to discover such hazards."

The case was tried to the Court without a jury on May 25, 1977. The injury to the plaintiff occurred on December 23, 1974. On that date, plaintiff and her young son, along with plaintiff's mother were shopping at Central Mall in Fort Smith, Arkansas and plaintiff entered the defendant's place

of business from the mall. Her mother was not with her at that time. Her son may have been but, after the accident he was found in the family car in the parking lot. A person entering the store from the mall entrance would first come to the cosmetic department. The cosmetics for the women are in front and the men's cologne is at the back of the department. There were four tables, two on each side of a center aisle. Prior to plaintiff's entrance, a $9.00 bottle of Monsieur Houbigant fell or was knocked from a shelf to the floor and the contents of the bottle, along with broken glass covered a rather large area traversed by patrons. The plaintiff, while along the aisle used by customers slipped on the substance and fell to the floor. Apparently no one saw her fall, but one of the employees of the defendant, Ms. Ann Oliver, was in the area. There were at least two other employees near the place where plaintiff fell, but only Ms. Oliver testified. The fall occurred about 3:00 or 3:30 p. m. and the closest employee to the plaintiff was Ms. Oliver. She fully appreciated that a dangerous situation existed, but turned away from the place where the fall occurred to wait on another person and when she finished with that person, she turned around and saw plaintiff on the floor suffering from severe pain.

The plaintiff was unable to state how long the substance had been on the floor, but Ms. Oliver knew that the floor was covered with the cologne and broken glass and that effectively nothing was done to remove it until after the fall had occurred.

Ms. Oliver was in the best position of any of the defendant's witnesses that were called to testify to know the facts. On May 24, 1976, her discovery deposition was taken. She testified that the cologne was spilled on the floor about 11:40 a. m. and about that time Mrs. Earnhart slipped and fell. She was asked the question:

Q: "And you say it (the cologne) fell on and was broken on the floor about what time?"

A: "I would say 11:45 at that time shortly before noon. I cannot be to the minute on that."

She was also asked:

Q: "Were there any other employees there at the time she fell?"

A: "Four other girls." Then the witness proceeds to name the girls to whom she was referring.

She further testified that Vicki Chitwood was her merchandiser, "but she was ringing our registers. We were so busy, we couldn't wait on all the customers and ring the sales ourselves. So I told her, I said 'Vicki, there is some broken glass. You've got to call the mop-up crew.' She called the mop-up crew and the reason I can state the time is that we called and the mop-up crew was out to lunch. I went to another department to find rags and I couldn't find any so I didn't lay sacks on the floor for the reason that if you lay sacks on there and something about the wax, you can't get it up, you know, when you mop up. We had several incidents like that."

She further testified that they didn't put up any kind of barricade around the substance. "The store was packed with people. I stood over it waiting for the mop-up crew and no one came."

She was also asked:

Q: "Did anyone else stand over the area or in any manner attempt to barricade the area to keep someone from falling in the substance?"

A: "Just myself."

Q: "Just yourself, but I understand that you had been there, but you had left and come back behind the counter?"

A: "There was a man on the opposite side and he was needing some help and he had been there for a while and I turned to him and said, 'Sir, can I help you?' and he said 'Yes, Ma'am, I need six bottles of Musk'."

The witness described the condition of the plaintiff as being serious.

The witness further testified:

Q: "Now if I understand what you are telling me, when the substance fell on

the floor you got some sacks and went out and picked up some of the glass?"

A: "All of the glass."

Q: "Okay, all of the glass; to the best of your ability, you picked up all of the glass, or attempted to pick up all of it?"

A: "Right."

Q: "Was there still liquid substance on the floor at that time?"

A: "Yes, sir."

Q: "And then you attempted to stand guard over it for a period of time to keep someone from falling in it when the mop-up men didn't come?"

A: "That's right."

Q: "And then you proceeded, because of this customer that you had an opportunity to sell on commission, you left the scene?"

A: "No, sir, that's not right. Not on commission, he was needing some help, he'd been there awhile and he was looking for something."

Q: "I understand, but in any event, you left the scene to go wait on another customer?"

A: "That's right."

Q: "And at this time there were many, many people in the store, coming and going, and the minute you left there was no one left to stand guard over this substance in the floor?"

A: "Yes. There was no one in that area other than this one man."

Q: "But I'm talking about, there was no other J. C. Penney employee to stand there and guard that area and warn folks that there was something on the floor that they might slip and fall in?"

A: "You're right."

At the trial, Ms. Oliver testified unequivocally that the bottle containing the cologne fell from the shelf and broke upon the floor some five to ten minutes after 12:00 Noon and reiterated the same on cross-examination by saying that the bottle of cologne fell shortly after Noon. However, Mrs. Nelda Moore, Personnel Manager of defendant, testified positively that the plaintiff fell in the afternoon. Other witnesses fixed the time at between 3:00 and 3:30 p. m. She further testified that when she was advised that the plaintiff had fallen that she rushed to the scene where she found the plaintiff on the floor with one of the other girls, who had a wet cloth on her head. She surveyed the surroundings to see what was going on and instructed the operator to call an ambulance. The ambulance arrived around 3:30 o'clock in the afternoon of December 23, 1974, and plaintiff was taken to the hospital.

The plaintiff testified that while she was lying on the floor the Manager, Mr. Robert R. Huleatte, was called and in her presence told Ms. Oliver that he had told her "at least an hour ago to clean up that mess". The discovery deposition of Mr. Huleatte was also taken on May 24, 1976 and he testified in his deposition that the accident to the plaintiff had been reported to him, but that he was not there at the time that it happened.

Q: "Do you know when it was reported to you?"

A: "In the afternoon, as I recall."

Q: "And after having had the incident reported to you, did you go to the scene?"

A: "To the scene?"

Q: "To the scene where Mrs. Earnhart was lying on the floor?"

A: "I don't recall that I did. No."

Q: "Do you remember whether or not you did, or you just don't recall whether you did or did not?"

A: "I don't recall whether I did. I assumed, of course, that it had been cleaned up by that time."

In the taking of the deposition, counsel for defendant also propounded the question:

Q: "Have you personally reviewed any reports or had anything to do relative to this particular case involving Mrs. Earnhart?"

A: "Only to the effect that Mr. Ledbetter called me, oh, about a month ago, I

guess, and said I might be asked to make a deposition. I suggested that since I did not even recall the incident at all, thinking I was probably out of the store on lunch . . . that it would virtually be of no use since I did not remember the incident. And I also told Mr. Schultis the same thing, and then last week he said my presence was requested down here, so other than those two particular incidents is all I remember about it."

However, at the trial, Mr. Huleatte denied that he told Ms. Oliver "that he had told her at least an hour ago to clean up that mess."

■ Upon a consideration of all of the testimony, including the contradictory testimony given in the discovery depositions hereinbefore referred to, the Court is of the opinion that it is shown by the evidence, or is reasonably inferable therefrom, that the foreign matter was negligently left on the floor by the storekeeper or its employees whose acts it is responsible for, or that the matter had remained on the floor a sufficient length of time that the storekeeper knew, or, in the exercise of ordinary care, should have known of its presence.

Relative to the statement made by Mr. Huleatte to Ms. Oliver as above set forth, Mr. Huleatte, in his deposition, further testified:

Q: "So you don't have any knowledge or any recollection of having directed that it be cleaned up?"

A: "No. This is a fairly common occurrence, you know, in the store."

The employees of the defendant seemed to be reluctant to testify and all apparently were anxious to protect themselves from censure or liability.

Even if Mr. Huleatte did not see the plaintiff and did not make the statement to Ms. Oliver in the presence of plaintiff that "he had told her to clean up the mess an hour ago", the record shows that at least two or three assistants of the Manager were in the store and it is possible that the plaintiff could have thought that the person so speaking was the Manager when in truth and in fact he may have been an assistant, but who did not testify in the case as a witness. In addition to the assistant manager, there were three or four women available for aid and, in fact, one contacted the clean-up crew for help but was told that they had gone to lunch.

The Court is convinced from an examination and study of all the evidence, the attending circumstances and record as a whole, that the defendant failed to exercise ordinary care and as a proximate result thereof, the plaintiff received the injuries complained of.

■ In reaching the above conclusion, the Court is not unmindful of the plea of the defendant that the plaintiff was guilty of contributory negligence in failing to see the substance that was on the floor and in failing to exercise ordinary care for her own safety. The defendant refers to the fact that Mrs. Stewart, the mother of plaintiff, saw the substance and did not fall because she was watching where she was walking. She first saw her daughter in pain lying on the floor in the "mess", and the fact that Mrs. Stewart may have seen the mess is not any proof that plaintiff was guilty of contributory negligence in not seeing the substance until she fell. Of course, a storekeeper is not an insurer of his patrons against any and all hazards which may be encountered on the premises, but where the negligence of the storekeeper is the direct and proximate cause of the injury to a patron, the storekeeper becomes liable.

■ In this connection, it must be remembered that the plaintiff was an invitee of the defendant and the defendant owed a duty to the public, including the plaintiff, to exercise ordinary care to keep its premises in a reasonably safe condition for the safety of all persons who might come into said store on business.

From all of the testimony and the circumstances existing at the time, the Court is convinced that plaintiff was not guilty of any negligence and the plea of contributory

or comparative negligence made by the defendant should be denied.

As heretofore stated, the plaintiff was conveyed to the hospital where she was attended by physicians of the Holt-Krock Clinic of Fort Smith, Arkansas, where her left arm was deadened with shots at the shoulder, the break was set, arm put in cast and she remained at the hospital at that time for about six hours when she went home but had to go back the next day. The cast was opened, arm swollen and in "a lot of pain". She was hospitalized and treated by Dr. Irwin, Buie and others. Since her fall, she has been in a cast four different times. During most of the time she has been in severe pain. Her first doctor was Dr. H. Kirkpatrick, who unfortunately is dead. On June 2, 1975, her treatment was rescheduled for examination on July 9, 1975. As a result of the examination, it is noted that plaintiff still had residual restriction of motion of her wrist and on July 21, 1975 she had 25 degrees of flexion at the wrist, 20 degrees of extension, 25 degrees of radial deviation and 20 degrees of ulner deviation. X-rays were reviewed and showed a residual dorsal angulation at the radial carpal. On that date, Dr. Peter J. Irwin stated that in his opinion the medical care was completed and that she would have a residual degree of permanent physical impairment amounting to ten percent of the wrist as a result of the restriction of motion.

Since she returned home from her last examination, she has had some incidents caused by weakened condition of her wrist which required medical treatment and the application of casts to permit same to heal. These incidents which she has encountered occurred usually by simply leaning against the bathtub, which she was cleaning with the other hand and by putting pressure on the floor by her hand while squatting to put on a pair of shoes. One incident occurred when she was climbing out of a swimming pool and exerted too much pressure on her wrist which caused it to give way.

From a consideration of all the facts pertaining to her injury since December 23, 1974, she will be disabled the remainder of her life and will suffer pain from the injury. Her total medical expenses exceeded some Two Thousand and No/100 ($2,000.00) Dollars. Although she is asking for only One Thousand, Four Hundred Ninety-five and 23/100 ($1,495.23) Dollars as reimbursement for actual expenses incurred which have not been paid by the defendant, she had numerous drug bills which she has misplaced and was unable to present to the Court.

In the opinion of the Court, she is entitled to recover all of her clinical and hospital expenses incurred by her as a result of this injury. She is not asking for compensation for lost time from her ordinary household duties, although her left wrist is not normal and will handicap her in performing her normal household duties.

█ She has suffered intense pain and will continue to suffer pain and the Court believes that a reasonable allowance for the actual pain and suffering endured is Fifteen Thousand and No/100 ($15,000.00) Dollars, in addition to the One Thousand, Four Hundred Ninety-five and 23/100 ($1,495.23) Dollars for actual proven expenses of which a record was kept.

Under the facts and the applicable law, plaintiff is entitled to recover, and judgment is being entered in favor of plaintiff, Mildred Redding Earnhart, and against defendant, J. C. Penney Co., Inc., for the sum of Sixteen Thousand, Four Hundred Ninety-five and 23/100 ($16,495.23) Dollars, and all costs.